JAMES W. SCUDDER *et al.*, Appellants, v. WILLIAM L. BAILEY *et al.*, Defendants; JUSTIN E. JOY, Respondent.

St. Louis Court of Appeals, March 24, 1896.

1. **Chattel Mortgage, Validity of:** POWER OF SALE AND SUBSTITUTION. A chattel mortgage of a stock of merchandise in a store, and of all other property subsequently acquired by the mortgagor in any business at said store, empowered the mortgagor to sell and dispose of the salable merchandise in the course of his business, but required him to keep a strict account of sales and purchases made to replenish stock and to render statements each month to the mortgagee and pay him the proceeds of the sales. *Held*, BIGGS, J., dissenting, that the mortgage was *prima facie* valid.

2. ———: FUTURE-ACQUIRED PROPERTY: REPLEVIN. A mortgage of future-acquired property can, prior to entry into possession by the mortgagee, be enforced only in equity. Accordingly, a mortgagee who has not been in possession of such property can not maintain replevin therefor.

*Appeal from the St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*Campbell & Ryan* for appellants.

(1) The clause in the mortgage conveying after-acquired property was valid. *Railroad v. Railroad*, 108 Mo. 298; *Burton v. Sitlington*, 30 S. W. Rep. 514–516. (2) The clause in mortgage providing that, as to the merchandise on hand at the time of its execution, and thereafter acquired, the mortgagor had the power of sale and for the proceeds must account to the mortgagees was valid. *Hubbell v. Allen*, 90 Mo. 574; *Metzner v. Graham*, 57 Mo. 404. (3) The condition in the mortgage, permitting Bailey to replenish his

stock, and making such replacements subject to the lien of the mortgage, and requiring him to account to the mortgagees for the proceeds of their sales, was valid; and the payments made to vendors of such merchandise could not be complained of by Bailey's creditors, nor did such purchases and payments make the mortgage fraudulent in law. *Barton v. Sitlington*, 30 S. W. Rep. 514–516; *Etheridge v. Sperry*, 139 U. S. 266–271; *Brackett v. Harvey*, 91 N. Y. 214–223; *Ephraim v. Kelleher*, 29 Pac. Rep. 985–987; *Sedgwick City Bank v. Wichita Merc. Co.*, 45 Kan. 346; *Felner v. Wilson*, 55 Ark. 77; *Fuller v. Railroad*, 78 Mich. 36, 45–47; *Lister v. Simpson*, 38 N. J. Eq. 438; *Scott v. Alford*, 53 Tex. 82, 90–94; *Peabody v. Landon*, 61 Vt. 318–322; *Roundy v. Converse*, 71 Wis. 524–527; Jones on Chattel Mortgages, secs. 381, 425. The mortgage here was certainly not fraudulent in law; and the court had no right to so declare as it in effect did in its own first instruction, and expressly in the second instruction given for respondent. *Hubbell v. Allen*, 90 Mo. 574; *Bullene v. Barrett*, 87 Mo. 185; *Manhattan Brass Co. v. Webster G. & Q. Co.*, 37 Mo. App. 145; *Thompson v. Foerstel*, 10 Mo. App. 290–296; *Lister v. Simpson*, 38 N. J. Eq. 438; *Peabody v. Landon*, 61 Vt. 318–322–328; *Scott v. Alford*, 53 Tex. 82–92.

*H. M. Pollard* for respondent.

Biggs, J.—In 1892 the defendant Bailey commenced a retail grocery business in Old Orchard. The plaintiffs, who are wholesale grocery merchants, sold him goods on credit. On the second day of February, 1894, he owed them a balance, on account, of $1,700, for which he executed seventeen notes of $100 each, payable respectively in that many months. To secure these notes Bailey executed a

chattel mortgage on his stock of goods, furniture and fixtures, and three horses and three delivery wagons. The mortgage, after describing the property then on hand, contained the following additional clause, to wit: "Also the goods, wares, cereals, merchandise and all other property, hereafter acquired by me to be used in any business at said store and warehouse, the property hereby mortgaged to remain in possession of William L. Bailey until condition broken as hereinafter provided, with the right on said Bailey's part to sell and dispose of the salable merchandise (excluding the fixtures, horses, wagons and harness, which shall not be disposed of) in the course of his business, he to keep a strict account of sales and of purchases made to replenish stock, and render statements on the first of each month to Scudder and Company, and pay them the proceeds of said sales in liquidation of the debt hereby secured, until same is paid or default upon condition broken as herein provided." After the execution of the mortgage Bailey continued to buy and sell goods in the usual course of trade. During that year he bought of the plaintiffs additional goods of the value of $4,000 or $5,000, and over $10,000 from other wholesale merchants, the most of which he paid for out of the sales. He rendered monthly statements to the plaintiffs up to and including July, and during that time he paid four of his notes, and made some payments on the additional purchases. After July he ceased to make statements and failed to pay any more of the notes, but the plaintiffs continued to sell goods to him. He continued the business until the twenty-first or twenty-second day of January, 1893, when he sold and delivered to the respondent Joy all of the goods then in the store and warehouse which had been acquired subsequently to the execution of the mortgage. A gray mare was also included in the purchase,

which Baily claimed to have bought after the mortgage was given. It is claimed by Joy that Bailey at the time of the purchase owed him about $6,000, the bulk of which was unsecured, and that, in order to save a portion of his debt, he bought the after-acquired property at an agreed valuation of $1,000, for which he gave Bailey credit. On the day of the sale, or the day thereafter, a representative of plaintiffs demanded of Bailey the possession of the property, when he was informed by Bailey that he had sold and delivered the after-acquired portion to Joy, and that the remainder was in his (Bailey's) possession subject to the orders of the plaintiffs. Thereupon the plaintiffs instituted the present action in replevin for the entire property, and it was taken by the sheriff and delivered to them. Bailey made default, and Joy answered and asserted title only to the goods purchased after the mortgage was given and demanded a return of them to him and damages for their detention. He denied the taking of the other goods. Under the instructions of the court the jury found the issues for Joy as to the after-acquired property, and its value was assessed at $949.90, and the damages for taking it at $1. The respondent having so elected, a judgment was entered on this verdict in his favor, and against the plaintiffs and their sureties, for the assessed value of the property and for the damages and costs. There was a judgment in favor of the plaintiffs against Bailey for the balance of the property. The plaintiffs, having unsuccessfully moved for a new trial, have brought the case here by appeal.

The circuit court on its own motion gave the following instruction, to wit: "The court further instructs you that the mortgage read in evidence by the plaintiffs, and executed by the defendant, Wm. L. Bailey, is as to these plaintiffs and defendant Wm. L. Bailey a good,

valid mortgage as to all the goods thereby conveyed, and also as to the merchandise subsequently acquired by the said defendant Bailey; and, unless the defendant J. E. Joy has proven to your satisfaction that on the twenty-second day of January, 1895, he was a creditor of Wm. L. Bailey in good faith, and as such creditor purchased the property in question and took possession thereof, that is, the property acquired by said Bailey after the execution of said mortgage, from said Bailey at a reasonable purchase price, and gave him full credit for such purchase price on his indebtedness, you should find the issues for the plaintiffs.''

One of the objections urged to this instruction is that it assumes as a matter of law that the plaintiffs' mortgage was fraudulent as to creditors and purchasers. My associates are of the opinion that the mortgage as written is *prima facie* valid, and hence the instruction was [erroneous. However, for reasons hereinafter stated, in which we all concur, the error was a harmless one. Speaking on this point for myself only, I think that the mortgage, by necessary implication, conferred on Bailey an unrestricted right of sale and substitution, which, under all of the authorities in this state, rendered the mortgage invalid as to creditors and subsequent purchasers in good faith. It has been universally ruled by the appellate courts of this state that a mortgage of goods, which permits the mortgagor to continue the business in the usual course of trade, is a conveyance to the use of the grantor, thus bringing the conveyance within the inhibition of the statute. There is a line of decisions, however, commencing with the case of *Metzner v. Graham*, 57 Mo. 404, which hold that a clause permitting the mortgagor to sell is valid, provided the proceeds of the sales are agreed to be paid in liquidation of the mortgage debt. And there are other decisions, notably

that in the case of *Jennings v. Sparkman*, 48 Mo. App. 246, which approve or countenance a qualified right of substitution in certain cases, such as are necessary to supply breakage, loss, or waste of the mortgaged property.   But I know of no case in this state that goes so far as to approve of an unlimited power of substitution. On the contrary, such an authorization has been expressly held by this court to be in contravention of the statute.   *State to use v. Busch*, 38 Mo. App. *loc. cit.* 444.   Now, as to the mortgage in controversy, the power of sale and substitution is unrestricted.   It is true that the mortgage provides that the proceeds of sales should be paid in liquidation of plaintiffs' notes, but coupled with this is the obligation of Bailey to report all purchases in connection with the sales, thus making the inference unavoidable that new goods should be paid for out of the proceeds of the sales, and that the net proceeds thereof only should be paid to the plaintiffs.   In my opinion the contract will admit of no other reasonable construction.

Another objection urged against the instruction is that it failed to submit the question of the good faith of Joy in making the purchase.   We do not find in the record any substantial evidence of bad faith on the part of either Joy or Bailey in the transaction.   The evidence is abundant and undisputed that Bailey owed Joy largely in excess of the value of the goods, and that the goods were taken at a fair valuation.   The only matter which even suggests a fraudulent purchase is that Joy employed Bailey as a clerk in the establishment.   This fact standing alone amounts to nothing. There was also some evidence that, about the time of the purchase of the goods, Bailey conveyed to Joy a lot in satisfaction of a mortgage debt which Joy held against the lot.   In connection with that transaction

Joy paid Bailey $160 in money. Joy testified that the payment was a mere gratuity on his part, and that the transaction was entirely independent of the purchase of the goods, and there is no evidence to the contrary. But *quaere,* if there was evidence tending to prove that the sale was made by Bailey with the intention to hinder, delay or defraud, his other creditors, and that Joy participated in the fraud, would not the maxim, *in pari delicto potior est conditio possidentis* apply, as it appears that the plaintiffs themselves are fraudulent mortgagees?

Other objections are made to the instructions. Some of those given for respondent are open to criticism, if not serious objection, but, however erroneous they may be, the judgment will have to be affirmed as being for the right party. The evidence leaves no doubt that the contest between the plaintiffs and Joy was over the after-acquired property only. The latter denied the taking of the other property, and there was no effort made to prove that he had it in his possession or that he had at any time claimed to own it. While it has been settled in this state that a mortgage of after-acquired property is good in equity as between the parties, and as to third persons acquiring the property with actual notice of the existence of the mortgage (*Barton v. Stitlington,* 128 Mo. 164; *Keating v. Hannenkamp,* 100 Mo. 161; *France v. Thomas,* 86 Mo. 80; *Rutherford v. Stewart,* 79 Mo. 216; *Wright v. Bircher,* 72 Mo. 179; *Thompson v. Foerstel,* 10 Mo. App. 290), yet until the mortgagee or trustee in such a mortgage takes possession, his right to the property can only be enforced in a court of equity. That was the ruling in *France v. Thomas, supra,* where it is held that a mortgagee who has never been in possession can not maintain replevin for after-acquired property. The decision

in that case has never been overruled, and is, therefore, binding on us.

It follows that the judgment of the circuit court must be affirmed. All the judges concur.