BAKER & TAYLOR COMPANY, Appellant, v. J. G. SCHNEIDER, Garnishee, Etc., Respondent.

### Kansas City Court of Appeals, November 5, 1900.

1. **Fraudulent Conveyances: SECRET TRUSTS: TRUSTEE DELAYED BY CREDITORS.** The fact that a trustee in a deed of trust to secure certain preferred creditors of a mercantile corporation was delayed for two years in the disposition of the trust property by suit brought by the unsecured creditors, is of itself insufficient to impugn the validity of the trust deed and send the case to the jury on the question of a secret trust in favor of the grantor.

2. ————: ————: **FILLING SPECIAL ORDERS OF CUSTOMERS.** The fact that the trustee during the existence of the trust bought goods to fill special orders of the customers of the store (which goods were kept distinct from the trust stock) and charged himself with the commissions on such sale, is likewise insufficient to send the question of secret trust to the jury.

3. ————: ————: **TRUSTEE CONTRACT FOR COMMISSION GOODS.** The fact that such trustee during the two years he kept the store open in the usual course of trade, secured a consignment of commission goods, which were placed in the store and sold therefrom, but kept separate from the trust stock and accounted for in distinct accounts, can not tend to impugn the trust deed.

4. ————: ————: **EMPLOYING LATE MANAGER.** Where a trust deed empowers the trustee to employ assistants, the fact that he employs the late manager of the concern will not vitiate the trust where the trustee himself gives the business his reasonable attention.

Appeal from the Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

AFFIRMED.

*Charles M. Street* for appellant.

(1) We think this combination of circumstances clearly establishes that the trustee went beyond the authority conferred by the deed of trust, and in conjunction with said Campbell operated said store in disregard of the power of sale contained in the trust deeds, establishing in law a secret trust, no matter how pure were the intentions of the parties. Hepburn v. Mueller, 10 Mo. App. 87; Mfg. Co. v. Supply Co., 149 Mo. 538; Bank v. Powers, 134 Mo. 432; Bigelow v. Stringer, 40 Mo. 205; Bank v. Lime Co., 43 Mo. App. 561; Reed v. Pelletier, 28 Mo. 173; State to use v. Tasker, 31 Mo. 445; Read v. Wilson, 22 Ill. 377; Deering v. Washburn, (Ill.) 29 N. E. Rep. 560. (2) It was his duty to follow the deed of trust and if he could not sell the stock in the regular course of trade without buying new goods and maintaining consignment contracts, he should have sold the stock in bulk regardless of what it brought, provided, of course, that in his judgment it would bring more than sale in the regular course of trade, without the replenishing of stock or making outside contracts, for which he had no authority. This equity suit, as will appear from the petition, was not maintainable, because there was a remedy at law. Humphreys v. Milling Co., 98 Mo. 542; Westheimer v. Giller, 8 Mo. App. 373; Bank v. Packing Co., 138 Mo. 59; 2 Shinn on Attach. and Garn., sec. 546, 467; Mfg. Co. v. Supply Co., 149 Mo. 538.

*Stauber, Crandall & Strop* for respondent.

(1) The beneficiaries in this deed of trust took this deed

Baker & Taylor Co. v. Schneider.

of trust to secure a *bona fide* debt which they had the right to do.  Mapes v. Burns, 72 Mo. App. 411; Parker v. Roberts, 116 Mo. 663; Crother v. Busch, 153 Mo. 606.  There is no evidence of any wrong on the part of the mortgagor, trustee or beneficiaries at the time of executing the deeds, during the time the same was in litigation, or in its disposition.  Stokes v. Burns, 132 Mo. 224.  (2) We submit that when these appellants joined with the Sanford Manufacturing Company in the equity suit, and thus tied up the estate in litigation and the trustees as he says in his testimony could not sell it, because purchasers would not buy on account of this equity suit, that from the delay in closing the trust caused by appellant in that way no inference of fraud, or secret agreement can be presumed or inferred, for the reason that such acts and conduct on part of appellants would constitute an equitable estoppel.  Krey v. Hussmann, 21 Mo. App. 343; Fowler v. Carr, 63 Mo. App. 486; Green v. City of St. Louis, 106 Mo. 454, and other cases.  (3) This record does not show even a scintilla of evidence of fraud, secret trust or improper management, and a verdict against the trustee would have been set aside.  Rottmann v. Pohlmann, 28 Mo. App. 399; Hite v. Railway, 130 Mo. 132; Peck v. Railway, 31 Mo. App. 123, and others.  (4) A trustee with over twenty thousand dollars worth of books and stationery to be disposed of, was likewise guilty of the violation of no principle of law when he took orders for papers and periodicals and other small items required and necessary to sell the other goods and the total amount of which does not exceed five hundred dollars during the two years and more that appellant had the trustee and the trust property in litigation.  Mfg. Co. v. Supply Co., 149 Mo. 538; Shoe Co. v. Wilson, 63 Mo. App. 326.

SMITH, P. J.—This is a proceeding by garnishment on an execution.  The case as disclosed by the record before us may be stated in this way:

The St. Joseph Book and Stationery Company— a mercantile corporation engaged in the buying and selling of books, stationery, etc., and which for convenience we shall hereinafter refer to as the Stationery Company—being largely indebted to various persons, on January 12, 1897, executed and delivered to the garnishee, Schneider, as trustee, a certain deed of trust, conveying in trust to him all the general stock of merchandise, personal property of every kind, including books of accounts, choses in action, etc., to secure the payment of certain promissory notes and accounts therein specified, amounting to in the neighborhood of sixteen thousand dollars. All of this indebtedness would mature within ninety days from the date of the deed of trust.

It was provided in the deed of trust that the trustee should take immediate possession of the property conveyed, and on default of the payment of the indebtedness specified therein when the same matured, he, the said trustee, should proceed to make a correct inventory of the trust property and collect all notes and accounts and proceed to sell and dispose of the property in the regular course of trade, or, at public vendue, with or without notice, or in bulk at private sale without notice as in the judgment of the trustee might be deemed best for the interest of the parties concerned. It was further provided that the trustee should keep an accurate account of all moneys received or disbursed under the trust open to the inspection of all the parties. It was still further provided that for the purpose of carrying out the trust, the trustee was authorized to employ such agents and servants as he deemed necessary. There were the further usual provisions therein in respect to the payment of the costs and expenses of carrying out the trust, and the payment of the debts secured, etc.

It appears that the said trustee took immediate possession of the trust property and made an invoice of the same.

It further appears that shortly after the date of the deed of trust the plaintiff herein recovered a judgment against the stationery company before a justice of the peace for $299.73. In March, 1897, the plaintiff with some other unsecured creditors brought a suit in equity against the stationery company and the said trustee, the object of which was to set aside said deed for fraud as to some of the preferred creditors and to compel another one of them to exhaust certain other securities held by him for his debt and for marshalling of the various assets of the stationery company and for the application of trust funds, etc.   In February, 1899, the plaintiff dismissed said equity suit.

The undisputed evidence shows that the trustee tried in vain to sell the stock in bulk at both public and private sale. No one could be found who would purchase because of the said suit of plaintiff and others against the trustee.   As soon as this suit was dismissed the trustee advertised and sold the trust property.

The plaintiff, immediately after dismissing its equity suit and before the trustee had made sale of the trust property, sued out an execution on its judgment against the stationery company and caused the trustee to be garnished thereon.   The garnishee answered denying any indebtedness to the stationery company or that he had in his possession or under his control any money or property of any kind belonging to it.   He further alleged the execution of the deed of trust and for what purpose and the possession of the property by him thereunder, and all the facts in relation thereto.

The plaintiff filed a denial of the answer of garnishee which was supplemented with an allegation that the said stationery company had executed said deed of trust and the garnishee had received the property described therein for the purpose of hindering, delaying, defrauding and cheating the

creditors of the stationery company; and that in accordance therewith the said stationery company and garnishee had managed said property and had conducted the store owned and operated by the former prior to January 28, 1897, in the same manner as such former had done as to purchases of stock by the latter and sales in the ordinary course of trade; and, that by reason thereof such latter had in his possession at the time of the service of the garnishment money and property sufficient to satisfy the plaintiff's said judgment, etc. On the issues thus made there was a trial before a jury. At the conclusion of all the evidence, an instruction in the nature of a demurrer thereto was given by the court and thereupon the plaintiff took a non-suit; and after an unsuccessful motion to set the same aside prosecuted its appeal here.

It is conceded that the deed of trust in question is valid on its face, but it is contended, by reason of certain extrinsic facts constituting a part of the transaction, that it is fraudulent and void as to plaintiff and other unpreferred creditors. The law is well settled in this state that where a conveyance appears on its face to be a secret trust for the grantor it will be declared void as a matter of law; and the same facts that will render it void if expressed on its face will also render it void if prove *aliunde*. And it will suffice if it be shown by competent evidence that the actors, in a transaction impugned for fraud, were actuated by a motive which the statute, section 5170, Revised Statutes 1889, denounces as fraudulent, that is to say, to hinder delay or defraud creditors. McDonald v. Hoover, 142 Mo. 484. A debtor in this state has an unquestionable right to prefer one of his creditors over another so long as he acts in good faith; but he has no right to make the indebtedness to one creditor the means not merely of securing that creditor but of placing the surplus of his property beyond that security in the hands of such creditor in such a

way as to put it beyond the reach of other creditors, or so as to hinder or delay them in respect to their lawful actions. And so it is said in Rubber Mfg. Co. v. Supply Co., 149 Mo. loc. cit. 551: "While the courts have firmly maintained the right of a debtor to prefer one creditor or set of creditors to others and the corresponding right of the preferred creditor to accept such preference, it has been uniformly ruled that in such case the preferred creditor must act only for an honest purpose of securing his own debt. The mere knowledge that his preference will delay or hinder other creditors or that the debtor so intended it, will not of itself defeat his preference, but if it appear from all the circumstances that he was not acting solely for the purpose of protecting and saving his own debt, but was aiding the debtor to defeat or delay his other creditors and in covering up his property or giving the debtor a secret interest in the property or in locking it up for the debtor's own use and benefit, then the transaction will be adjudged fraudulent as to the other creditors."

Now the question here, therefore, is whether the deed of trust under which the property was conveyed to the trustee, when tested by the rules just referred to is void as to the plaintiff, an unpreferred creditor. This brings us to the consideration of the vital question in the case which is whether or not the court, under the evidence, was justified in giving an instruction withdrawing the case from the consideration of the jury? The *bona fides* or innocence of the parties to the transaction of any actual intent to defraud is not disputed, but it is contended, notwithstanding this, that the combination of circumstances attending the execution of the trust as disclosed by the evidence, tends to establish what is in effect a secret trust in favor of the stationery company the grantor which renders the deed of trust void as to plaintiff and other unpreferred creditors. But we do not think this contention is well founded.

It is true that the garnishee, in his quality as trustee, did not dispose of the trust property for about two years after the creation of the trust, but the undisputed evidence shows that this delay was caused solely by the action of the plaintiff and the other unsecured creditors in bringing and continuing their equity suit attacking the deed of trust for fraud. Although the trustee offered the stock in bulk both at public and private sale he was unable to find a purchaser. Those desiring to purchase were deterred from doing so by the fear that the trustee could not by his sale pass a good title to the trust property. It seems that the trustee used every reasonable endeavor to secure a trial or other disposition of the equity suit, but that notwithstanding this, the plaintiff and the other unpreferred creditors were successful in keeping the suit in court for two years, and until its voluntary dismissal by them. By this suit the plaintiff and the other unpreferred creditors were able to cast a doubt and shadow on the validity of the trustee's title under the deed of trust, and to thus prevent a full and complete disposition of the stock by the trustee. It is quite obvious that the delay in enforcing the provisions of the deed of trust against the trust property was not in consequence of any agreement or understanding between any of the parties thereto nor did it result from an intention to benefit the grantor in any way; but on the contrary, the proximate cause of such delay must be attributed to the conduct of the plaintiff in bringing and prolonging the pendency of the said equity suit.

Can the plaintiff and the other unpreferred creditors now be heard to urge the delay in the action of the trustee in making a disposition of the trust property, which they themselves brought about by their own voluntary conduct and but for which it would not have happened as evidence of a secret trust for the benefit of the grantor or that it was sufficient to originate an inference that the preferred creditors in the transac-

tion were not acting solely for the purpose of saving their own debts but were aiding the grantor to defeat or delay the latter's other creditors, or in covering up his property or in giving him a secret interest in it or in locking it up for his own use and benefit. We can not think that the trustee's delay in the execution of the trust can, under these circumstances, be tortured into evidence tending to impugn the validity of the deed of trust. No case that we have seen has gone so far.

It further appears from the evidence that from the time of the bringing of the equity suit until it was dismissed when persons would come into the store and call for a book or magazine which was not in stock the trustee would order and deliver the same to them, making the usual profit thereon, which he charged himself with in the account which he was required to keep of the moneys received and disbursed on account of his trust. The aggregate amount of these purchases during the two years did not exceed five hundred dollars. These goods did not go upon the shelves of the store nor were they offered on general sale nor were they blended with the trust stock. The store was kept open during the pendency of the plaintiff's suit and such goods were sold from the stock as were from day to day called for. And the trustee made the purchases just alluded to for the customers of the store under the impression, no doubt, that he was thereby subserving the best interest of all concerned.

The plaintiff now insists that the trustee in making these purchases exceeded the powers which were conferred on him by the deed of trust, and that evidence of this fact was sufficient to justify the inference that in making such purchases the trustee was actuated by a motive which the law denounces as fraudulent. Suppose the deed of trust itself had on its face provided that the trustee should, while the store was kept open and until there was a final disposition of

the stock, have authority to purchase from time to time such articles of merchandise as should be ordered by customers and to charge himself in his accounts with the profits realized therefrom, would any court for this reason have declared such instrument constructively fraudulent as being to the use of the grantor? This case is to be distinguished from those in which the conveyances were declared fraudulent and void for the reason that the trustee or mortgagee was therein granted the unlimited and unrestricted power of sale and substitution, and to continue the business in the usual course of trade. Scudder v. Bailey, 66 Mo. App. 40, and cases there cited.

In the present case, as has been already stated, the extrinsic evidence shows without contradiction that the trustee limited and restricted his purchases to such articles as were specially ordered by customers. Nor was there any evidence adduced of an agreement, express or implied, that the grantor was to continue business in the usual course of trade for an unlimited time, or that he did so continue after his hands were untied. It can not therefore be seen that the action of the trustee, limited and restricted as it was, can be said to contravene any sound principle of law. Rubber Co. v. Supply Co., 149 Mo. loc. cit. 559.

It further appears that during the two years the store was kept open and goods sold therefrom in the usual course of trade the trustee himself on his own motion secured the consignment or commission of school books, amounting in value to several thousand dollars, which were placed in the store and sold. The commissions arising from such sales amounted to about one thousand dollars. The trust funds were not invested in these consignments, nor were they jeopardized by the action of the trustee in handling them. The consigned goods and the account of sales were kept separate and distinct from those of the trust. From this action of the trustee we are not able to deduce any inference unfavorable to the validity of the deed of trust.

It further appears that the trustee under the power given by the deed of trust to employ such assistance and help to carry out the provisions of the deed of trust as he deemed necessary, employed a stockholder and officer in the stationery company who had been the manager of its business before the execution of the deed of trust—to assist him in the sale and disposition of the trust property. The trustee was a banker and did not give his entire time to the trust store, but was there four or five times a day when he directed the late manager of the store and the other employees in respect to the sale and disposition of the trust property. The trustee was authorized to employ the late manager of the stationery company's business to help him, and nothing is seen in his conduct in that regard that in any way tends to raise the inference of any fraud tainting the transaction.

The entire conduct of the trustee in the execution of the trust was as far as the evidence discloses honest, economical and is not justly subject to the plaintiff's criticism. It follows therefore that the action of the trial court must be upheld and its judgment affirmed; which is ordered accordingly. All concur.