## TUTTLE et al. v. BLOW et al., Appellants.

### Division One, June 20, 1903.

1. **Appointment of Receiver:** JUSTIFICATION: NOTICE: INJUNCTION: MORTGAGE ON TRADE-MARK. The plaintiffs, who were the mortgagees, in a suit to foreclose a mortgage on a trade-mark and the right to sell a salve, and, as ancillary thereto, to have a receiver appointed to take charge of the property pending the suit and to enjoin further use thereof by the mortgagees, charged in their petition that the property covered by the mortgage was insufficient in value to pay the debts it secured; that the mortgagors not only disputed the validity of the mortgage, which was a fact in itself tending to depreciate its value, but that they were so using the manufacturing privileges covered by the mortgage as to anticipate and discount the income; and that one of tnem, at least, threatened to disclose the secret formula according to which the salve was made. *Held*, that these allegations authorized the court to employ its equity powers to appoint a receiver to preserve the property, without notice to the mortgagors, and also to issue its injunction against them in aid thereof, since the petition makes it appear that an act ruinous to plaintiffs' rights is contemplated by defendants, and notice would enable them to accomplish that ruin before the court could prevent it.

2. ———: NOTICE: WHEN NECESSARY. The appointment of a receiver to take charge of defendant's property without notice to him is the exercise of extraordinary power, and should be done only in cases of great emergency, but the notice of an application for an injunction is actually required by the statute only in case the injunction is sought to stay proceedings at law.

3. **Mortgage:** WHAT MAY BE MORTGAGED: TRADE-MARK. The mortgagors' ancestor in his lifetime owned a secret formula according to which a proprietary medicine called "T. L. Stephens Chemical Eye-Salve" was manufactured and sold, at great profit. It was put up in small bottles, on each of which was a small label of particular design, and on each box of a dozen bottles was a larger label of the same design. This label became so well known that it was a mark by which the salve was known in the trade, and

thus became the trade-mark of the proprietor of the compound, and in 1873 he had it registered in the Patent Office and received a certificate therefor, as was contemplated by an act of Congress relating to trade-marks which in 1878 was declared unconstitutional, but in making the mortgage the mortgagors therein declared that they "do sell, assign, transfer and set over . . . all their right, title and interest in a certain trade-mark for eye-salve which was duly registered in the Patent Office by" the proprietor . . . "which trade-mark is numbered 1142, and is for the exclusive right for manufacture and sale of 'T. L. Stephens Chemical Eye-Salve', as also all our right, title and interest in the patent and proprietary right in and to" the salve. *Held*, that the mortgage does not purport to convey a right acquired under the registration of the trade-mark in the Patent Office, which, since the law was declared unconstitutional, was of no legal effect or value, but did convey in unmistakable terms the trade-mark, which was what the proprietor had owned before the registration in the Patent Office and continued to own after the law under which the registration was made was declared unconstitutional, and, hence, the inapt reference to the patent did not render invalid the transfer of what was in fact transferred. *Held*, also, that the mortgage conveyed property that is susceptible of being mortgaged, and transferred to the mortgagees, not only the trade-mark, but by apt words, "all the right, title and interest" of the mortgagors in the salve, since with the mortgage they gave to the mortgagees a sealed package containing the secret formula.

4. ———: ———: TRADE-MARK. A mere trade-mark dissociated from the trade or business with which it is to be used is not susceptible of sale or transfer, and can not be mortgaged. But a trade-mark as an accessory of property or as a thing to be used in connection with one's business and applicable to the product of his manufacture, is assignable.

5. ———: ———: GENERAL RULE. Generally, anything or any right that is capable of passing by succession or descent to the heirs or the personal representatives of an intestate, or that is capable of passing by absolute sale, is capable of being incumbered by a mortgage.

6. ———: ———: GOOD FAITH OF MORTGAGOR. The courts will not put a construction on a mortgage which will impugn the good faith of the mortgagor.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*S. H. King* for appellants.

(1)   The allegations of the petition show that a court of equity is without jurisdiction, and notwithstanding their allegation to the contrary, they have a plain, adequate and complete remedy at law.   Sec. 7, R. S. 1889; secs. 7078, 7084, 7085, 1993, 2207, 7085. Where a statutory remedy exists, equity will not interfere or assume jurisdiction.   Schlector's App., 60 Pa. St. 155.   A proceeding to foreclose a mortgage under the statute is a legal remedy. 135 Mo. 604.   (2)   The petition is not sufficient in law to authorize the appointment of the receiver, and the order appointing him in this case.   Nor is there anything in said petition to authorize the order as made.   High on Receivers (2 Ed.), secs. 112, 406, 12, 11, 17, 24, 106, 107, 109, 36; Jones v. Brinker, 20 Mo. 87; Vesquez v. Ewing, 24 Mo. 31; Congress Spring Co. v. High Rock Spring Co., 45 N. Y. 298.   (3)   "A patent may be mortgaged, but a trade-mark, as such, can not be mortgaged."   Brown on Trade-Marks, sec. 153.   (4)   The right to a trademark can not exist as a mere abstract right independent of, and disconnected with the business.   It is not property, as distinct from, but only as incident of the business.   It can not be transferred except with the business.   Ween v. Brayton, 152 Mass. 103; Chadwick v. Covell, 151 Mass. 195; Schneider v. Williams, 44 N. J. Eq. 301; Hoxie v. Chaney, 143 Mass. 597; Batchellor v. Thompson, 86 Fed. 632; Richter v. Reynolds, 59 Fed. 579; Hicks v. Knost, 94 Fed. 626; The LePage v. Russia Cement Co., 51 Fed. 943; Battle v. Finley, 50 Fed. 106; Manufacturing Co. v. Trainor, 101 Fed. 54; Brown Chemical Co. v. Meyer, 139 U. S. 544; Fish Bros. Wagon Co. v. Fish Bros. Manfg. Co., 95 U. S. 461; Royal Baking Powder Co. v. Raymond, 70 U. S. 380; Marshall v. Pinkham, 52 Wis. 572; Russia Cement Co. v. LePage, 147 Mass. 201; Burton v. Stratton, 12 Fed. 696; Lawson on Good Will, p. 28.   (5)   A trade-mark

does not pass with the business unless expressly agreed. Nor is it exclusive, when transferred, unless expressly so stated in the agreement. Hoxie v. Chaney, 143 Mass. 597; Chadwick v. Covell, 151 Mass. 190; Basset v. Percival, 5 Allen 347; Hazard v. Caswell, 93 N. Y. 264; Emerson v. Badger, 19 Pick. 216; Blake v. Shaw, Johns. 732; Delaney v. Delaney, 15 L. R. Ir. 55; Richardson v. Pilliner, 50 L. J. Ch. 488. (6) William T. Blow never had a trade-mark, but simply a trade name in the word "Dr. T. L. Stephens Eye-Salve." Columbia Mill Co. v. Alcorn, 150 U. S. 466; Brown Chemical Co. v. Meyer, 139 U. S. 544; P. M. Co. v. P. M. P. Co., 135 N. Y. 30; Gilman v. Nunnewell, 122 Mass. 148; Russia Cement Co. v. LePage, 147 Mass. 206; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 Mass. 542; Kidd v. Johnson, 100 Mass. 617; Fish Bros. Wagon Co. v. Fish Bros. Mfg. Co., 95 Fed. 451; Alaska Packer's Assn. v, Alaska Imp. Co., 60 Fed. 124; Actiengessellschaft-Bereinigte-Ultramarine, etc., v. Amberg, 102 Fed. 552. Any one can employ the symbol of an eye. (7) Nor did William T. Blow's widow and children obtain a trademark or the right to use the trade name of this medicine upon his death, by operation of law or otherwise, to the exclusion of anyone else. Singleton v. Bolton, 3 Doug. 293. (8) The right to one's name on his goods and to transfer the use of his name with his goods to a purchaser, is not founded on the theory that the same is a trade-mark, but upon contract between the parties in which the transferrer expressly deprives himself of the right to use his name in connection with that particular business. Hicks v. Knots, 94 Fed. 657; Walter-Baker & Co. v. Baker, 77 Fed. 184; American Cereal Co. v. Eli Petijohn Cereal Co., 76 Fed. 374; Russia Cement Co. v. LePage, 147 Mass. 206; Kidd v. Johnson, 100 U. S. 617; Columbia Mill Co. v. Alcorn, 150 U. S. 466. (9) The mere name of a person does not form a property subject for a trade-mark, Ex parte Fairchild, 21 Off.

Gaz. (Pat. Cas.) 789; Marshall v. Pinkham, 52 Wis. 572; Brown Chemical Co. v. Meyer, 139 U. S. 544; Columbia Mill Co. v. Alcorn, 150 U. S. 466; Royal Baking Powder v. Raymond, 70 Fed. 380; Lawson's Good Will, p. 21. A manufacturer acquires no property in words as such. Royal Baking Powder Co. v. Raymond, 70 Fed. 380. (10) Trade-mark should point out the origin or ownership, etc., of the goods or place of business. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 542; Columbia Mill Co. v. Alcorn, 150 U. S. 466; Royal Baking Powder v. Raymond, 70 Fed. 380; Actiengessellschaft-Bereinigte-Ultramarine, etc., v. Amberg, 102 Fed. 522. The words "Dr. T. L. Stephens Eye-Salve" indicates to the public that Dr. Stephens is still making said medicine, which is not true and is misleading the public. Prince Metallic Paint Co. v. Prince Mfg. Co., 57 Fed. 942. (11) The purchaser, assignee, or successor to this medicine should state, in using the medicine and trade name or trade-mark, to the public, that he is such purchaser, assignee, or successor, etc.; otherwise, he is misleading the public, in which case a court of equity will not protect him in its use. Manufacturing Co. v. Trainer, 101 U. S. 54; Manhattan Medicine Co. v. Wood, 108 U. S. 223; H. S. Co. v. H. S. Co., 144 N. Y. 462; Alaska Packers' Assn. v. Alaska Imp. Co., 60 Fed. 103; Royal Baking Powder v. Raymond, 70 Fed. 380; Dennison Mfg. Co. v. Thomas Mfg. Co., 94 Fed. 669; Actiengessellschaft-Bereinigte-Ultramarine, etc., v. Amberg, 102 Fed. 552. (12) Neither the stock in trade, nor the capital invested, nor the income arising from the sales of the medicines, nor any property belonging to the said Blows could pass, even if they had transferred the "good will" of their business, unless the same was specifically or sufficiently described in the mortgage or sale. Blake v. Shaw, Johns. 732; Delaney v. Delaney, 15 L. R. Ir. 55; Richardson v. Pilliner, 50 L. J. Ch. 488.

*Noble & Shields* and *W. H. Ludwig* for respondent
·Caroline Lueders.

(1)   A trade-mark together with the business or
the right to manufacture and vend the article to which
it is attached, or which it indicates, can be sold or mort-
gaged.   Skinner v. Oakes, 10 Mo. App. 45; Oakes v.
Tonsmiere, 49 Fed. 447; Richmond Co. v. Richmond,
159 U. S. 293; Morgan v. Rodgers, 19 Fed. 597; Bank
v. Warren, 94 Wis. 160; Warren v. Thread Co., 134
Mass. 247; Fish Bros. v. Fish Bros., 87 Fed. 206; Fish
Bros. v. Fish Bros., 95 Fed. 461; Sarrazin v. Irby Co.,
·93 Fed. 626; Kidd v. Johnson, 100 U. S. 617; Dixon v.
·Guggenheim, 2 Brew. (Pa.) 321.   ·(2)   The assignment
to Mott and Lueders conveyed the full and exclusive
right and liberty of making and vending said eye-salve
together with the exclusive right to the use of said trade-
mark.   (3)   If any ambiguity exists on the face of the
instrument as to this proposition, parol evidence is al-
ways admissible to point out the subject-matter involved
·and explain surrounding facts and circumstances to
show the meaning of the parties as expressed in the
language employed in the instrument.   Amonett v.
Montague, 63 Mo. 201; Skinker v. Hogsma, 99 Mo. 208;
Welsch v. Edmisson, 46 Mo. App. 282; Edwards v.
Smith, 63 Mo. 119; Block v. Warner, 93 Mo. 374; Wolfe
v. Dyer, 95 Mo. 545; Thornton v. Railroad, 40 Mo. App.
265; Weil v. Schwartz, 21 Mo. App. 372; Blair v. Corby,
.37 Mo. 313.

*Dawson & Garvin* for respondent Curd.

(1)   The trial court had original chancery jurisdic-
·tion of the persons and of the subject-matter of this suit
and to issue its restraining order and appoint a receiver
for the protection of the mortgages; and the petition
was sufficient for the purposes of a trial on the merits
in that court.   Tuttle v. Blow, 163 Mo. 644; Wolff v.
Ward, 104 Mo. 145.   (2)   The order restraining de-
·fendants Blow and Ballard and appointing a receiver

was properly made on complainant's application, and was properly confirmed and made perpetual by final decree after trial on merits. Glover v. Bond Ind. Co., 138 Mo. 417; Railroad v. Wear, 135 Mo. 260; Wolff v. Ward, 104 Mo. 127; Ashurst v. Lehman, 86 Ala. 372; Sims v. Adams, 78 Ala. 397; Haugan v. Netland, 51 Minn. 555; High on Injunction (2 Ed.), secs. 116, 117; Kerr on Receivers, 7-10; People v. Norton, 1 Paige Ch. 18; Carrow v. Ferron, L. R. 3 Ch. App. 729. The apparent insufficiency of the mortgaged property and insolvency of the defaulted mortgagors and impending diversion of the income and profits warranted their sequestration. Wolff v. Ward, 104 Mo. 158; Bank v. Field, 156 Mo. 311; Dunham v. Stevens, 60 S. W. 1064; High on Receivers, secs. 643, 644; Beach on Receivers, p. 194; Kerr on Receivers, pp. 7-10; Main v. Ginthert, 92 Ind. 185; Lofsky v. Maujer, 3 Sandf. Ch. 71. (3) The mortgage on its face conveys all the proprietary rights, including the exclusive right to manufacture and sell the trade-marked eye-salve, and the trade-mark would pass as an incident. Morgan v. Rogers, 19 Fed. 597; Filkins v. Blackman, 13 Blatchf. 443; Congress Spg. Co. v. High Rock Spg. Co., 45 N. Y. 301; Shipwright v. Clements, 19 Weekly Reptr. 600; Fulton v. Cellars, 4 Brewst. 48; Chattanooga Med. Co. v. Thedford, 66 Fed. 545; Hoxie v. Cheney, 143 Mass. 592; Upton on Trade-Marks, pp. 52, 53, 80; Skinner v. Oakes, 10 Mo. App. 58; McClain v. Fleming, 96 U. S. 251. (a) Appellants are estopped by their deed to deny that the property in controversy was not conveyed by plaintiff's mortgage. Skinner v. Oakes, 10 Mo. App. loc. cit. 50; Bailey v. Trustees, etc., 12 Mo. 177; Tyler v. Hall, 106 Mo. 319. (b) Appellants, when the mortgage was given, owned and enjoyed exclusive valuable rights to manufacture and sell this eye-salve, and they had, and could have had, but one trade-mark by which to designate it. Richmond Nervine Co. v. Richmond, 159 U. S. 302; Dixon Crucible Co. v. Guggenheim, 2 Brewst. 335.

(4) The attempted registration of the trade-mark in the patent office did not create a new trade-mark or destroy the old one. The registration was merely the recording of evidence of the applicant's title at common-law to a trade-mark. The recorded trade-mark is the common-law trade-mark, having, when recorded, not only the common-law protection, but in addition the statutory protection. R. S. U. S. 1878, secs. 4937-4941-4945-6; 1 Suppl. U. S. R. S. (2 Ed.), p. 322, act March 3, 1881, sec. 1; Rodger v. Phillips, 40 Ga. 31; Trade Mark Cases, 100 U. S. 92; LaCroix v. May, 15 Fed. 237; Sarrazin v. W. R. I. Cigar Co., 93 Fed. 624; Hones Drug Co. v. Stucky, 46 Fed. 628; Brown on Trade-Marks (2 Ed.), 380, 377, 378, 374; Papen v. Wilcox, 14 Abb. (U. S.) 208; Derringer v. Plate, 29 Cal. 292; Filley v. Fassett, 44 Mo. 175; The Glencoe Mfg. Co. v. Ludeling, 22 Fed. 826. (5) An imperfect attempt to create a mortgage, or to appropriate specific property to the discharge of a particular debt, will create a mortgage in equity, or a specific lien on the property so mortgaged. Blackburn v. Tweedie, 60 Mo. 507; McQuie v. Play, 58 Mo. 58; Martin v. Nixon, 92 Mo. 26. (6) One may do what he will with his own unless prohibited by positive statute or restrained by manifest public policy. There is no law and no public policy which inhibits the assignment absolutely or as security of the exclusive right to use this trade-mark on salve, made according to the original formula. Richmond Nervine Co. v. Richmond, 159 U. S. 302. Property capable of absolute sale may be mortgaged. Jones on Chattel Mtgs., sec. 114; Herman on Chattel Mtgs., sec. 36; White v. Quinlan, 30 Mo. App. 63. (7) This property may be sold by order of a court of equity. Bradbury v. Dickens, 27 Beav. 53; G. & H. Mfg. Co. v. Hall, 61 N. Y. 230; Ainsworth v. Walmesby, 35 L. J. Ch. 355; Oakes v. Tonsierre, 4 Woods 552; Matthews v. Green, 19 Fed. 650; Bank v. Robinson, 57 Cal. 524; Hall v. Barrows, 4 DeG., J. & S. 152; Skinner v. Oakes, 10 Mo. App. 55; Derringer v. Plate, 29 Cal. 292.

And the purchaser protected against infringement. Flour Mills v. Eagle, 86 Fed. 608.

VALLIANT, J.—This is the second appeal in this case. It is a suit to foreclose a mortgage, and, ancillary to the main object, the equity powers of the court are invoked to preserve the property by placing it in the hands of a receiver pending the suit and enjoining the defendants from taking certain action calculated to impair the value of the security. Upon the filing of the petition a receiver was appointed and an injunction granted; there were motions by defendants to vacate the order appointing the receiver and to dissolve the injunction, which motions were overruled and an appeal taken. Upon the hearing in this court that appeal was dismissed and the cause was remanded to the circuit court with directions to proceed to final hearing on the merits, first affording defendants leave to file an amended answer. This court on that appeal held that the only question presented by the record in its then condition was, did the circuit court have jurisdiction to make the orders complained of? and the judgment was that it did have such jurisdiction. [Tuttle v. Blow, 163 Mo. 625.]

When the cause was returned to the circuit court defendant answered and a trial on the merits was had, which resulted in a decree for plaintiffs, from which some of the defendants again appeal.

The mortgage which the plaintiffs seek to foreclose was executed by the defendants, the Blows, September 17, 1889, to secure eight notes made by them of that date, aggregating $25,817.64, bearing eight per cent interest, maturing in series running from eighteen months to eight years, payable to the order of Edwin Curd, who is the plaintiffs' assignor.

The property mortgaged is thus described in the granting clause of the instrument: "That said parties of the first part for and in consideration [describing the notes] do by these presents, sell, assign and transfer

·and set over to the said party of the second part, all their right, title and interest in a certain trade-mark for eye-salve, which was duly registered in the Patent Office of the United States, by William T. Blow, of St. Louis, Missouri, and recorded in the Patent Office and declared to be in force for thirty years from 25th February, 1878, which said trade-mark is numbered 1142, and is for the exclusive right for manufacture and sale of T. L. Stephens Chemical Eye-Salve, as also all our right, title and interest in the patent and proprietary right in and to T. L. Stephens Chemical Eye-Salve, provided always this sale, transfer and assignment are upon this express condition, that is to say,'' etc. Then follows the condition that the sale is to become void if the notes are paid, otherwise the mortgagee is given the power to sell on ten days' notice.

Upon the trial it was shown that William T. Blow in his lifetime owned a secret formula according to which a proprietary medicine called "T. L. Stephens Chemical Eye-Salve" was manufactured and sold in the market. Although the sale of this article was quite extensive and yielded the proprietor an income of $12,-000 a year, yet the article itself was small and was not of sufficient proportions to require the maintenance of a manufactory, but under the supervision of one man, Michael Fredericks, employed for that purpose, sufficient quantity of the salve to supply the trade for twelve months was made up and put into condition for sale within six weeks. The salve was put up in small bottles or vials, on each of which was a small label of particular design, and on each box of a dozen vials was a larger label of the same design. This label had been so long used in connection with the salve that it was well known in the market and was a mark by which the article was known to the trade. It thus became the trade-mark of the proprietor of the compound. In 1873, Mr. Blow had this trade-mark registered in the Patent Office at Washington and received a certificate thereof,

as was contemplated in the Act of Congress of 1870 relating to trade-marks. That act was afterwards declared unconstitutional by the Supreme Court of the United States, and the certificate of registration, therefore, became of no legal effect. Mr. Blow died in 1877 and his widow and two sons, defendants originally herein, became owners of the title that he had owned to the secret formula, the trade-mark and the right to manufacture and sell the proprietary medicine. They continued the business as he had done, with some variations in the business methods, and were doing so down to the time that this suit was instituted, when the receiver took the business out of their hands. Under the management of the widow and sons the business does not seem to have been as successful in yielding revenues as it had been in the lifetime of Mr. Blow, although it still yielded the proprietors a large income.

On March 1, 1883, Mrs. Blow borrowed of F. W. Mott $2,000, and of Mrs. Lueders $3,500, and to secure the same made an assignment of her right in this eye-salve and trade-mark to them. In that assignment the thing conveyed was described as a patent-right to manufacture and sell the salve under letters-patent issued by the United States. The instrument was drawn by a man who was not a lawyer and who with the certificate of registration of the trade-mark before him interpreted it to be letters-patent and thus described it:

"Whereas letters-patent, bearing date the 25th day of February, A. D. 1873, were granted and issued by the Government of the United States of America, under the seal thereof, to William T. Blow, of St. Louis, Missouri, for a certain trade-mark for eye-salve, styled 'Dr. T. I. Stephens Celebrated Chemical Eye-Salve,' which patent is No. 1142, and registered February 25, 1873, and to which patent reference is hereby made for a full and particular description of said trade-mark and eye-salve, which is annexed to said letters-patent, by which letters-patent the full and exclusive right and liberty of mak-

ing and using said invention, and of vending the same to others to be used, was granted to the said Wm. T. Blow, his heirs, executors, administrators and assigns, for the term of thirty years from the date thereof.''

The $2,000 secured by that instrument was afterwards paid, but the $3,500 was unpaid. The parties interested in that mortgage were made parties defendants. When Mr. Curd took the mortgage under which the plaintiffs claim, he knew of the existence of the mortgage in favor of Mr. Mott and Mrs. Leuders. Upon the execution of the mortgage to Curd, and as a part of the transaction, the secret formula under which the eye salve was compounded was given to him in a sealed package. Up to August 16, 1894, the mortgagor had made payments on the Curd debt amounting to $8,-498.94; since that date nothing has been paid on it. There were averments in the petition to the effect that the mortgagors in possession were conducting the business in a manner to indicate that they were endeavoring to realize as much as possible at once and impair the value of the property, and it was upon that showing that the court appointed a receiver and granted the injunction. The evidence at the trial tended to sustain those averments. When the receiver was appointed the package containing the secret formula was delivered to him and by order of the court he opened it and continued to conduct the business as nearly on the plan that it had theretofore been conducted as good judgment for the interest of all concerned seemed to dictate. Pending the suit William T. Blow, Jr., died, and his administrator has entered his appearance, and also since the suit was begun Benj. E. Blow has transferred to S. H. King his interest in the mortgaged property and Mr. King has answered. It also appeared that since the commencement of the suit Isaac Curd had by purchase become the owner of all the notes covered by the plaintiffs' mortgage.

By the finding of the court there is due Mrs. Leu-

ders $3,741.67 on her mortgage and there is due the plaintiff, Isaac Curd, as purchaser from Tuttle, assignee of Edwin Curd, on his mortgage, $55,409.34.

The decree takes the form of a judgment for $3,-741.67 in favor of Mrs. Leuders against Mrs. Blow, and for $55,409.34 in favor of Isaac Curd against Mrs. Blow, Benjamin E. Blow and the administrator of William T. Blow, Jr., deceased, and in default of payment of the judgments a foreclosure of the mortgage is decreed and a sale of the secret formula, the trade-mark and the exclusive right to manufacture and sell the salve mentioned in the name of "Dr. T. L. Stephens Chemical Eye-Salve," and out of the proceeds after paying costs, one-third, or a sufficient part of one-third, is to be paid to Mrs. Leuders on her mortgage, and the rest to the extent of his debt to plaintiff Isaac Curd, and the balance, if any, to be returned into court to be disposed of as the court may thereafter order.

The learned counsel for defendants has favored us with an elaborate brief in which he has given us the result of an exhaustive research into the books and has discussed the case from several standpoints, but all the propositions laid down may be grouped into two, viz.: first, that the court had no authority under the showing made to appoint the receiver and issue the injunction when and as it did; second, that the thing or the right attempted to be mortgaged was not susceptible of being incumbered by a mortgage.

I. Upon the former appeal in this case it was decided, BRACE, P. J., delivering the opinion, that notwithstanding the fact that the proceeding to foreclose a mortgage under the terms of our statute (sec. 4342, R. S. 1899) was an action at law, yet the circuit court as a court of equity still retained the same jurisdiction to foreclose mortgages and adjust the rights of the parties thereunder which was originally exercised by courts of chancery. Whether in this case the court had properly exercised its judicial discretion in making the ap-

pointment of the receiver and issuing the injunction, the record then before us did not warrant us in deciding. But as the record is now here with all the showing made by the plaintiffs, the question is one for decision. The jurisdiction of the court on proper showing to make such orders is not questioned, but it is insisted that the proper showing was not made, and it is complained that the court acted without notice to the defendants, taking their property from them without giving them a hearing.

There were averments in the petition going to show that the property, or the incorporeal right conveyed in the mortgage, was insufficient in value to pay the debts for which it was pledged, and that the defendants, the mortgagors, not only disputed the validity of the mortgage, which was a fact in itself tending to depreciate its value, but they were so using the subject of the mortgage as to anticipate and discount its income, and one of them at least threatened to disclose the secret formula and thus destroy the value of the business. A chancellor could not under those circumstances have rightfully refused the prayer of the plaintiff for the preliminary orders looking to the safe custody and preservation of the property in dispute. The court may, under a proper showing, appoint a receiver and issue an injunction without notice to the other side, and it should do so whenever it is made to appear that an act ruinous to the plaintiff's rights is contemplated, and notice given to the defendant would enable him to accomplish it before the court could prevent it. But the appointment of a receiver without notice is the exercise of an extraordinary power and should be done only in cases of great emergency, and even then the defendant should be afforded a speedy hearing on a motion to vacate the order. [Railroad v. Wear, 135 Mo. 230; High on Receivers (3 Ed.), sec. 111, and following.] The only notice required by our statute of an application for injunction is in case the injunction

is sought to stay proceedings at law. [Sec. 3633, R. S. 1899.] But the court in any case may and ordinarily should require reasonable notice before issuing an injunction of any kind. The record in this case shows that the defendants were afforded an opportunity to be heard without delay on a motion to vacate the orders and they were granted an appeal on the overruling of their motion and every opportunity was afforded them to right any wrong that was done them. There is nothing in the action of the court in relation to the appointment of the receiver or issuing of the injunction of which the defendants now have any cause to complain.

II. Appellant's main insistence, however, is that the mortgage of plaintiffs is of no force or effect because the thing or the right attempted to be mortgaged is not susceptible of being so encumbered.

The mortgage of plaintiffs describes the trade mark as "a certain trade-mark for eye-salve which was duly registered in the Patent Office of the United States by William T. Blow, of St. Louis, Missouri, and recorded in the Patent Office and declared to be in force for thirty years from the 25th day of February, 1873, which said trade-mark is numbered 1142 and is for the exclusive right for manufacture and sale of T. L. Stephens Chemical Eye-Salve," etc. The act of Congress under which that registration was authorized was afterwards declared to be unconstitutional; therefore, no right was acquired by it. But whilst the registration and the certificate imparted no new right to the holder of the trade-mark, it did not detract from the right he already had. The terms of the mortgage do not purport to convey to the mortgagee a right acquired under the act of Congress by the registration, but what it does convey in the clause just quoted is the trade-mark; that is, that trade-mark which he had before owned and which he registered.

But in addition to the trade-mark the mortgage con-

veyed "also all our right, title and interest in the patent and proprietary right in and to T. L. Stephens Chemical Eye-Salve." And with the mortgage they gave the mortgagee a sealed parcel containing the secret formula to be used in case it became necessary to foreclose the mortgage. So that the mortgage conveyed the trade-mark, the exclusive right to make and sell the eye-salve and to use the trade-mark in connection therewith and in order to enable the mortgagee to realize the right conveyed, the formula was also given him.

It may be conceded to appellants that a mere trademark dissociated from the trade or business is not susceptible of sale or transfer. As such it is of no use and the law will take no account of it. But a trademark as an accessory of property or as a thing to be used in connection with one's business and applicable to the product of his manufactory or to his goods in trade, is a subject of the law's care and is assignable. [Brown on Trade-Marks (2 Ed.), sec. 57.]

As a general rule any thing or any right that is capable of passing by succession or descent to the personal representatives or heirs of an intestate, or that is capable of passing by absolute sale, is capable of being incumbered by mortgage. The mortgagors themselves claim to own this trade-mark and the proprietary medicine by succession from William T. Blow, deceased. The administrator of William T. Blow, Jr., is here claiming his interest by succession as assets of the estate, and Mr. King is here also claiming a one-third interest by assignment. How, then, can they be heard to say that the right is not assignable?

Whilst some of the authorities cited in their brief bear out the appellants' contention that a trade-mark unconnected with any property or trade is a mere abstract right of which the law will take no account, none of them sustain the proposition that a trade-mark connected with the right to make and sell the thing which

it indicates is not susceptible of being transferred by a mortgage.

As to the Lueders mortgage, the only question in its way is in regard to the description of the right or thing mortgaged. The scrivener had before him the certificate of the registration of the trade-mark; he saw that it emanated from the Patent Office, and he concluded that it was a patent-right. But the facts all appear on the face of the instrument to show what it really was in spite of the misnomer. It is the same trade-mark described in the plaintiff's mortgage, and in attempting to state its legal effect the scrivener says: "by which letters-patent [meaning the certificate of registration] the full and exclusive right and liberty of making and using said invention [meaning the eye-salve] and in vending the same to others to be used, was granted to William T. Blow, his heirs, executors," etc. No such right was by that certificate granted to Mr. Blow, but he had that right independent of the certificate, and the plain meaning of the mortgage in spite of its clumsy verbiage, is that that right, together with the trade-mark, is pledged for the payment of the $5,-500 which the mortgagor then borrowed on the faith of it. No other construction can be put upon it without impugning the good faith of the mortgagor, which we have no right to do.

The circuit court took the correct view of this case, and the judgment is affirmed.

All concur.