FLEISHER BROS., Appellants, v. WM. B. HINDE, Respondent.

Kansas City Court of Appeals, December 3, 1906.

1. **APPELLATE PRACTICE: Abstract: Additional Abstract: Leave of Court.** Under the statute and rules the appellant must file his abstract on the day before the case is docketed for hearing and he cannot evade such duty by filing without leave of the court an additional abstract after his attention has been called to fatal defects in his original one.

2. ———: ———: **Exceptions: Motion for New Trial.** Where the abstract fails to show exceptions to the overruling of the motion for new trial or the filing of such motion the appellate court should affirm the judgment.

3. ———: **Rehearing: Redocketing: Abstract.** When a cause is redocketed for a rehearing it stands as if it had never been heard and amended abstracts may be filed in proper time before the rehearing.

4. **CHATTEL MORTGAGES: Vendor's Lien: Mortgage Lien.** The instrument set out in the opinion is adjudged a mortgage and the fact that it denominates the lien retained as a vendor's lien does not change its character.

5. **FRAUDULENT CONVEYANCE: Chattel Mortgage: Mortgagor in Possession.** A mortgage on a stock of merchandise where the mortgagor remains in possession is not necessarily void on its face where it does not appear that he is to sell and retain the proceeds of the sale to his own use.

6. ——: ——: ——: **Evidence: Intention.** On a review of the evidence relating to the conduct of business by the mortgagor after the giving of a mortgage it is held that the mortgage was not void as a matter of law since there was no fraudulent intention and the question as to the conversion of the proceeds on the evidence was for the jury.

7. ——: ——: ——: **Substitution of Goods.** The mere substitution of certain articles of merchandise in a store for other articles of the same character and value does not amount to a withdrawal of property from business especially where the mortgage contemplates such action and a creditor is not delayed, hindered or defrauded by a conveyance until some property out of which he has a specific right to be satisfied is withdrawn from his reach.

Appeal from Holt Circuit Court.—*Hon. Wm. C. Ellison,* Judge.

AFFIRMED.

*Jackson L. Smith, I. J. Ringolsky, T. C. Dungan* and *H. M. Dungan* for appellants.

*Chas. F. Booher, Ivan Blair* and *R. B. Bridgeman* for respondent.

BROADDUS, P. J.—This case was submitted to this court on the 10th day of March, 1906, at which time appellants were allowed ten days to file an additional brief and the respondent allowed ten days thereafter to file a reply brief.

The appellants had served respondent with a copy of what they denominated their abstract twenty days before the case was set for trial, which was the 9th day of March, 1906. The respondent had served appellants with a counter abstract, brief and argument on the 22nd day of February, 1906, in which he suggested that there was no record entry whatever of the signing or filing of the bill of exceptions. On March 8th, one day before the case was set for hearing, the appellants filed with the clerk of this court a certificate from the circuit clerk of Holt county to the effect that the record entry

showed that the bill of exceptions had been filed. On April 8, 1906, this court handed down an opinion in the case, holding that the bill of exceptions had been properly authenticated and filed, and reversed and remanded the case on its merits.

Subsequently, on April 9, 1906, the respondent filed a motion for a rehearing, in which it was suggested that there was nothing to show that a motion for a new trial had been filed, whereupon the court modified its former opinion and affirmed the cause for the reason that there was nothing in the record to show that such a motion had been filed, as suggested. After which appellants filed a motion for a rehearing which was sustained for the reason that when the original opinion had been withdrawn it amounted to a rehearing and that appellants had the right to be heard before the court again considered the cause.

·It became appellants' duty under section 813, Revised Statutes 1899, to file with the clerk of this court on or before the 8th day of March, 1906, the day before the case was docketed for hearing, it being the 9th day of said month, five copies· of a printed abstract or abridgment of the record in said cause, setting forth so much thereof as was necessary to a full understanding of all the questions presented for decision," etc. After appellants' attention had been called to a fatal defect in their abstract, they sought to evade the statute and rule supra, by filing with the court said certificate from the circuit court of Holt county that there was an order of said court directing the filing of their bill of exceptions, and at the same time they filed with the clerk a reply to respondent's abstract and brief, in which they set forth the said order contained in the said certificate of the circuit clerk. Appellants thus sought to evade said section 813 and rule fifteen, supra. This, they ought not to be permitted to do. As their original abstract stood, there was nothing to show that any bill of

exceptions had ever been signed by the judge or filed in the cause. Thereafter they were not entitled to file any additional abstract without the consent of this court upon good cause shown.

But that was not the only fatal defect in said original abstract. It failed to show that exception was taken to the action of the court in overruling the motion for a new trial; and failed to show that any motion for a new trial had ever been filed. Under the condition of the record as it then stood, this court should have affirmed the judgment as abstract did not show a bill of exceptions had been signed by the judge and an order for its filing. The appellants had no right to amend their abstract one day before the cause was set for trial, and no right after the submission of the case to file amended abstracts without the permission of this court. [Everett v. Butler, 192 Mo. 564.]

Since the case was redocketed for a rehearing at this term, appellants have filed a new abstract which obviates all the objections made to the original abstract. The case, having been set down for a rehearing, stands as if there never had been any former hearing. It is before us *de novo*. The appellants have duly served respondent with their new or amended abstract under the rules and deposited five copies of the same with the clerk of this court and, no objection being suggested as to its efficiency, the whole case is before us for consideration. [Ricketts v. Hart, 150 Mo. 68; Everett v. Butler, supra.]

Plaintiffs brought the present action on an account for eight hundred and thirty-three dollars. They afterwards sued out an attachment in aid and on a trial of the plea in abatement the judgment in the lower court was for the defendant and the attachment was dissolved. The property attached was a stock of merchandise consisting of drugs and medicines. The ground of attachment was that defendant had fraudulently conveyed his property so as to hinder and delay his creditors. It ap-

pears that defendant and B. B. Simmons, as partners, bought the stock attached and accepted possession thereof of Orla Davis, for twenty-four hundred dollars; nineteen hundred of which was paid in cash and the remaining five hundred evidenced by their five promissory notes of one hundred dollars each, and secured by the following instrument, to-wit: "This memorandum of agreement, made this 15th day of April, A. D. 1905, by and between Orla Davis, vendor, and W. B. Hinde and B. B. Simmons, vendees, witnesseth: that the said Orla Davis has this day sold, assigned and delivered the possession of the drug stock and fixtures in the store room leased and occupied by him in the Oregon Building and Improvement Company's building for the sum of twenty-four hundred dollars, to the said W. B. Hinde and B. B. Simmons, nineteen hundred dollars of which is cash in hand paid, and a vendor's lien retained for the remaining five hundred dollars, which is evidenced by five promissory notes for the sum of one hundred dollars each, due in two, four, six, eight and ten months, respectively, and signed by the said vendees, who hereby undertake to keep said stock up to its present standard, and not permit the same to run down, and to pay each and every one of said notes when due. It is further understood and agreed that if either of said notes should not be paid when due and payable, the said vendor may take possession of said stock and sell sufficient thereof in the usual conduct of business to pay all notes in default, as well as those not matured, and when said notes have been fully paid, the remainder of said stock shall be delivered to the vendors herein; but nothing herein contained shall authorize the said vendor to sell any goods at sacrifice, less than cost or market quotation."

This instrument was executed more than three months before, and it was recorded about three weeks after this action was brought. But it was recorded three days before the attachment was sued out. The

court refused a peremptory instruction to find for the plaintiffs, which they claim should have been given. We regard the instrument as a chattel mortgage. That it denominates the lien retained as a vendor's lien, is of no consequence. The face of the paper makes of it, to all intents and purposes, a mortgage.

What is its effect, upon the face, as to creditors? It permits the mortgagor to remain in possession and does not require him to account for proceeds of any part of sales to the mortgagee. But, upon its face, it does not permit the mortgagee to sell and dispose of the stock in the usual course of trade, and that, when no accounting is provided for, is the harmful matter. It was formerly held that a mortgage of a stock of merchandise, the mortgagor to remain in possession, showed on its face that it was intended that he could sell and dispose of it in usual course of trade (Lodge v. Samuels, 50 Mo. 204), but that case was overruled in Weber v. Armstrong, 70 Mo. 217, where it was held that a mortgage of "all their stock of drugs and fixtures contained in their drug store," the mortgagors remaining in possession, was not void on its face. To the same effect is Hisey v. Goodwin, 90 Mo. 366. In the mortgage in controversy, while it is apparent that the mortgagors are to remain in possession, yet it does not appear, so as to be said, as a matter of law, that they are to sell and retain proceeds of sales to their own use. It is true there is a provision requiring the mortgagor "to keep the stock up to its present standard and not permit the same to run down." But that could be done without selling. It has frequently been a question, under the decisions of the Supreme Court in Metzner v. Graham, 57 Mo. 404, and Hubbell v. Allen, 90 Mo. 574, whether a mortgage permitting the mortgagor to remain in possession and sell in the usual course of trade, but requiring him to account to the mortgagee for the proceeds of sales, could provide for replenishing the stock from such sales, as

well as deducting expenses of conducting the business, and rendering account for net proceeds to the mortgagee, and yet be valid against creditors. It was determined in an opinion by Judge VALLIANT in Dunham v. Stevens, 160 Mo. 95, that such a mortgage was valid. It had been intimated before that such provisions would not render it fraudulent as a matter of law, but had never been expressly decided. [Bank v. Powers, 134 Mo. 445, 446; Scudder v. Bailey, 66 Mo. App. 40.] So therefore, we conclude that the mortgage in this case cannot be said, as a matter of law, to be fraudulent on its face.

The question is presented whether the manner in which the partnership drug store was conducted constituted fraud as to creditors. Defendant, who was introduced by plaintiff, stated that the goods were sold in the usual course of business and a part was used to replenish the original stock on hand at the date of execution of the paper creating a lien in favor of Orla Davis. On examination in chief, he said: "After the execution of the instrument, transacted my business there and sold drugs and goods there right along as I ordinarily did. Yes sir, and applied the money to my own debts and so on, and continued that all the time from the 15th of April up to the present. The understanding between Davis and Simmons and I was, that we were to pay $100 every sixty days." On cross-examination he said that the only individual indebtedness he had at the time was a debt to the Philadelphia Clothing Co. and a little debt he owed Moore & Kreek, who had not yet presented their account, and that the other indebtedness spoken of was that of the partnership. The debt due the Philadelphia Clothing Company is the debt in suit. The evidence of Simmons, the other partner was that, "Hinde took out some money when he needed it. I could not tell you as to that." He stated that he himself drew out about thirty dollars in cash and that he got some stuff out of the store. Some of the proceeds of the sale of

goods were used to pay the expenses. The evidence further showed that the partners had paid up to the time the attachment was run, $178 on the mortgage debt, and increased by purchase of new goods the amount on hand. And it was also shown that it was the understanding of defendant with Davis, the mortgagee, that the firm was to pay $100 every sixty days on the debt.

Under this state of evidence, we do not think it was the duty of the court to declare, as a matter of law, that the mortgage operated as a fraud. It sufficiently appears that no fraud was intended, and the evidence was not of such a character as to show beyond dispute that defendant converted the proceeds of sale to the payment of his individual debts. It is true he stated in words that he did apply some of the proceeds to the payment of his own debts, but on cross-examination he further stated that he owed only two other debts, viz.: plaintiffs' debt and a small debt to two other persons. Simmons' evidence was that defendant drew out of the business money as he needed it. The inference, at least, may be drawn from such evidence, that he needed it for legitimate expenses in the conduct of the business as well as for any other purpose. The evidence tends to show, however, that he did not devote any of the proceeds of sales to the payment of his individual debts. And the withdrawal by Simmons of thirty dollars in cash and some goods from the business was not evidence against defendant. Such a withdrawal did not affect defendant's property rights in the goods. It only went to the diminution of Simmons' share in them. The only person who had any right to complain on that score was the mortgagee. It was for the jury to say under the two statements in evidence of defendant whether or not he had used the proceeds of sale to the payment of his individual debts. If he failed to apply the proceeds of sale to the payment of the debt, the mortgage was void

Fleisher Bros. v. Hinde.

whether he intended to defraud or not. [Reed v. Pelletier, 28 Mo. 177; State to use v. O'Neill, 151 Mo. 85; Bullene v. Barrett, 87 Mo. 186.] But whether he did or not was a matter, which, of course, was to be determined by the evidence. And, if the evidence was conflicting and not beyond dispute, it was the province of the jury to determine the matter.

But there is another question of law in this case. As stated, the evidence showed that there was more goods on hand at the date of the levy of plaintiffs' attachment than was on hand at the date of the mortgage. Under such circumstances, are we to say, conceding that a part of the proceeds of goods sold were applied to the payment of his individual debts, that the mortgage was fraudulent as to creditors. This court, in passing on that question said: "No creditor can be said to be delayed, hindered or defrauded by any conveyance until some property, out of which he has a specific right to be satisfied, is withdrawn from his reach by a fraudulent conveyance." [Peters Shoe Co. v. Arnold, 82 Mo. App. 8.] The mere substitution of certain articles of merchandise in a store for others of the same character and value would not amount to a withdrawal of property from the business, for such was necessarily contemplated by the mortgage. The court was right in refusing the instruction offered directing the jury to find for appellants. The instructions given appear unobjectionable.

There are other questions which might, with propriety, be discussed, but, as what has already been said, disposes of the case, we do not deem it necessary to go into them. Affirmed. All concur.