## THE BANK OF HOUSTON, Respondent, v. L. C. KIRKMAN et al., Appellants.

### Springfield Court of Appeals, May 8, 1911.

1. COUNTERCLAIM: Tort: Same Transaction: Pledge. In a suit by a bank on a note, defendants answered, setting up that they had borrowed the money for which the note was given, to loan to one Cummings, who in turn had entered into a written agreement, pledging as security for said loan a certain note and deed of trust held by plaintiff, and that plaintiff had agreed to turn over to defendants this note and deed of trust as soon as the bank's loan to Cummings, which the said note and deed of trust was pledged to secure, was paid, and that plaintiff had failed to comply with this agreement, alleging damages to the extent of the note sued on. *Held*, that any cause of action de·

fendants might have against the plaintiff for failing to deliver to them the note and deed of trust, was an action arising out of tort for conversion; that it was not connected with the note sued on, so as to be a part of the same transaction; that defendants could not set off or counterclaim for said conversion in an actin on the note, but would have to institute a separate proceeding.

2. **CONVERSION: When Action Accrues.** Defendants loaned $100 to one Cummings, taking his note for the same. To obtain the money for the loan to Cummings, defendants borrowed the same amount from plaintiff bank, giving their note for the same, which note matured sooner than the Cumming's note. The bank also held Cumming's note for $700, which was secured by a $1500 note and deed of trust in the bank's possession, which latter note and deed of trust Cummings pledged to the defendants to secure their loan and plaintiff agreed to turn over this $1500 note as soon as Cummings' $700 note was paid. Plaintiff failed to turn this $1500 note over to defendants, but delivered the same to Cummings, and it was finally paid and cancelled. *Held*, that any cause of action defendants might have was one in conversion and that the cause of action accrued at the time of the conversion and defendants were not required to wait until their debt from Cummings matured in order to assert their right to damages against plaintiff.

3. **APPEAL AND ERROR: Harmless Error: Judgment for Right Party: Counterclaim.** Although a trial court may be wrong in holding that the cause of action set up in defendants' counterclaim against plaintiff, would not lie because it was premature, yet, where it appears that the counterclaim would not lie because it was an action in tort, and not a part of the same transaction out of which plaintiffs' cause of action arose, then the error of the trial court is harmless and the judgment, being for the right party, it should be affirmed.

4. **PLEDGE: Chattel Mortgage: Equitable Lien.** B had pledged a note and deed of trust to secure a loan from plaintiff and subsequently executed a written instrument in which it was provided that the same note was "deposited or pledged" with defendants to secure a loan from them, and there was an agreement whereby the first pledgee was to turn the note over to the defendants as soon as the first loan was paid. The contract is examined and *held* that it amounts to a chattel mortgage and not an equitable lien.

5. **BANKS AND BANKING: Authority of Cashier: Disposing of Collateral Security.** A cashier can only bind his bank within the scope of his actual or apparent authority, but the restrictions of section 1112, Revised Statutes 1909, do not effect his authority; and in disposing of said collateral security when the

debt to the bank is paid, the bank is responsible for his action, in the absence of any notice to the party dealing with him, of a want of authority.

6. ———: ———: ———: **Notice.** Where a debtor has put up collateral with a bank to secure his debt and subsequently transfers or repledges this collateral to another, and the bank has been given notice of the transfer or repledging, together with direction to turn the collateral over to the transferee when the bank's debt is paid, it will be the duty of the bank so to do, and the agreement on the part of the cashier to comply with the notice and request will add nothing to the obligation on the part of the bank.

7. **COUNTERCLAIM: Tort: Same Transaction.** It is not the date of a contract, nor the moral reason for its execution, that permits a claim sounding in a tort to be offset against it, but to bring the tort within the statute there must be some connection in a legal sense between the contract sued upon and the tort, damages for which are sought to be set-off against it, and until this connection appears the set-off cannot be available.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Dooley, Hiett & Millard* and *W. E. Barton* for appellants.

(1) Cummings retained a vendible interest in the Brown note and had a right to and did make a valid second pledge. Bank v. Brown, 133 S. W. 860; Bank v. Totten, 144 Mo. App. 103; Southworth Co. v. Lamb, 82 Mo. 249; Dickey v. Porter, 203 Mo. 22; Bank v. Trust Co., 135 Mo. App. 366; Jordan v. Harris, 46 Mo. App. 177; 22 Am. and Eng. Ency. Law (2 Ed.), 879; Colebrook on Collateral Securities, 229. (2) The delivery of the Brown note to Cummings violated the bank's agreement, constituted a conversion and rendered the bank liable. Fox v. Young, 22 Mo. App. 386; Schaaf v. Fries, 90 Mo. App. 116; Smith v. Bell, 9 Mo. 875; Dufour v. Mepham, 31 Mo. 580; Allgear v. Walsh, 24 Mo. App. 139; Funkhouser v. Ingles, 17 Mo. App. 232; 22 Am. and Eng.

Ency. Law (2 Ed.), 873; 28 Am. and Eng. Ency. Law
(2 Ed.), 701. (3) A pledgor whose property has been
wrongfully converted by the pledgee has an election.
and may maintain either trover or assumpsit. Pipe Co.
v. Railroad, 137 Mo. App. 497; Stearns v. Marsh, 47 Am.
Dec. 248; 21 Ency. Pl. and Pr. 1024. (4) Where a
pledgee violates the terms of his pledge and converts the
property the pledgor has an immediate right of action
and need not wait for the maturity of his debt. Smith
v. Savin, 69 Hun 311, 30 Abb. N. C. 192; Donnell v.
Wyckoff, 49 N. J. L. 48; Bank v. Metcalf, 40 Mo. App.
501; Ripley v. Dobber, 18 Maine. 385; Bank v. Morris,
114 Mo. 255; Richardson v. Ashby, 132 Mo. 247; 22 Am.
and Eng. Ency. Law (2 Ed.), 874; 16 Ency. Pl. and Pr.
640. (5) The cashier was authorized to make the en-
dorsement on defendants' note, and thereby the bank
attoned to Williams and Kirkman and bound itself to
deliver the property to them. R. S. 1909, sec. 1094;
Bank v. Dick, 73 Mo. App. 356; Hyre v. Bank, 48 Mo.
App. 434; Bank v. Hughes, 62 Mo. App. 581; Winsor v.
Bank, 18 Mo. App. 665; Case v. Bank, 100 U.
S. 4654. (6) Kirkman and Williams succeeded to
all the rights and remedies of their pledgor. 16
Ency. Pl. and Pr. 651; 22 Am. and Eng. Ency. Law
.(2 Ed.), 879. (7) The facts set forth in defendants'
answer is a proper counterclaim. R. S. 1909, secs. 7445,
1807; Richardson v. Ashby, 132 Mo. 247; 22 Am. and
Eng. Ency. Law (2 Ed.), 875; Bank v. O'Connell, 35
Am. St. 313; Montague v. Stelts, 34 Am. St. 736; Mum-
sey v. Laidley, 26 Am. St. 935; Stearns v. Marsh. 47 Am.
Dec. 248.

*Lamar, Lamar & Lamar* for respondent.

(1) Even in the absence of a statute, at common
law, a bank cashier has no authority to bind the bank
by the character of contract by which appellants seek to
hold the respondent liable. Morse on Banks and Bank-
ing (2 Ed.), 152; Bolles on Bank Officers, 272; Huff-

cutt on Agency (2 Ed.), 155; 5 Cyc. 475; Bank v. Dunn, 6 Peters 51, 8 Law Ed. 316; U. S. v. Bank 21 Howard 356, 16 Law Ed. 131; Bank v. Hughes, 62 Mo. App. 582; Marshall v. Bank, 76 Mo. App. 92; Bank v. Wilson, (N. C.) 32 S. W. 889; Bank v. Clancy (Mich.), 128 N. W. 752; Asher v. Sulton (Kas.), 1 Pac. 537; Bank v. Lowther-Coffman Co. (W. Va.), 66 S. E. 713; Swindell v. Bank (Ga.), 60 S. E. 13; Vandervord v. Bank (Neb.), 95 N. W. 819; Sturdwan v. Bank (Neb.), 87 N. W. 156; Bank v. Levanseler (Mich.), 73 N. W. 399; Bank v. Bank (N. D.), 80 N. W. 766; Bullard Bros. v. Bank (Ga.), 49 S. E. 615; Flanagan v. Bank (Cal.), 56 Fed. 959; Bank v. Smith, 77 Fed. 138; Thompson v. McKee, 37 N. W. 367; Bank v. Demere, 19 S. E. 38. (2) In this state we have an express statute casting the management of business upon the board of directors. R. S. 1909, sec. 10999. (3) And also a statute expressly prohibiting the cashier from contracting debts or other obligations, or, from pledging, hypothecating or disposing, etc., of the assets of a bank without authority of the board of directors, and providing that such acts shall be null and void. R. S. 1909, sec. 1112; Hume v. Eagon, 83 Mo. App. 583; Vanstandt v. Hobbs, 84 Mo. App. 628; Powers v. Woolfolk, 132 Mo. App. 363; Ins. Co. v. Bank, 121 Mo. App. 489; Blake v. Bank, 219 Mo. 664; Bank v. Lyons, 220 Mo. 554. (4) Williams and Kirkman under the agreement shown in evidence, did not take a legal pledge but acquired only an equitable right. There can be no legal pledge without delivery of possession. 6 Words and Phrases, 5413, et seq.; 31 Cyc. 789; Bank v. Totten, 114 Mo. App. 105; Bank v. Trust Co., 135 Mo. App. 375; Bank v. Brown, 133 S. W. 862; Colbrook on Collateral Securities, secs. 127, 176, 132, 133; Bank v. Iron Co., 102 Fed. 755; Ketchum v. St. Louis, 101 U. S. 306, 25 Law Ed. 999. (5) Appellants having only an equitable defense, could not enforce it before a justice of the peace, because a justice of the peace has no jurisdiction of an equitable counterclaim. R. S. 1909, sec.

7445; 24 Cyc. 477; Small v. Speece, 131 Mo. App. 513; Sandige v. Hill, 70 Mo. App. 71; Morris v. McMahan, 75 Mo. App. 494. This is true even though the equities sought to be enforced arise out of the same transaction. (6) Again, appellants, by their pleading have declared on a tort. If. they have a cause of action at all, it arose when the conversion occurred and arose out of the wrongful delivery by the Bank of the Brown note. This tort is not a proper subject of counterclaim or offset against an action on a contract on the note. R. S. 1909, sec. 1807, 7445; Gant v. Duffy, 71 Mo. App. 91; Wilkerson v. Farnham, 82 Mo. 672. (7) Bearing in mind that this is not an action by the pledgor and owner of the property whose pledge has been converted by the pledgee, but it is one by a second equitable pledgee whose debt from the pledgor of the equity is not yet due, it is submitted that the action attempted to be set up in the counterclaim is premature and cannot be maintained at this time. Jennings v. Zerr, 48 Mo. App. 528; Heard v. Ritchey, 112 Mo. 516; Schaff v. Fries, 90 Mo. App. 111; Tobin v. McCann, 17 Mo. App. 481; Russell v. Englehart, 24 Mo. App. 36; Bank v. Fisher, 55 Mo. App. 51; Bank v. Morris, 114 Mo. 255.

COX, J.—This action was begun before a justice of the peace upon a note for one hundred dollars. On appeal to the Circuit Court judgment went for plaintiff and defendants have appealed to this court.

The facts connected with this transaction are as follows: Frank Cummings was the owner of a promissory note for fifteen hundred dollars, secured by a deed of trust upon real estate. Cummings borrowed seven hundred dollars from plaintiff bank and pledged the fifteen hundred dollar note and deed of trust to the bank as collateral security. Afterward Cummings and defendants, Kirkman and Williams, entered into a contract by which Kirkman and Williams were to furnish Cummings more money from time to time until five hundred

dollars should be furnished, and to secure them Cummings executed and delivered to them a writing, the material parts of which are as follows:

"$500.00          HOUSTON, Mo., Oct. 3, 1907.

On or before May 2d, 1910, after date, I promise to pay to R. W. Williams and L. C. Kirkman, Five Hundred Dollars, for value received, negotiable and payable without defalcation or discount, at the Bank of Houston, with interest from maturity at the rate of eight per cent per annum, having deposited or pledged with R. W. Williams and L. C. Kirkman collateral security for the payment of this note, one promissory note secured by deed of trust for fifteen hundred dollars, dated May 2nd, 1905, and due seven years thereafter with the express understanding and agreement between the makers and payee thereof that $200 thereof should be paid annually thereon until the same is paid in full, drawn by Edith A. Brown and Alfred H. Brown in favor of Henry Parmenter and by him assigned to the maker of this note and now pledged to the Bank of Houston to secure a note of seven hundred dollars, to the payment of which this pledge is subject.

"Now, in the event of the non-payment of this note at maturity, the holders thereof are hereby invested with full authority to use, transfer, hypothecate, sell or convey the said property, or any part thereof, or to cause the same to be done, at public or private sale, with or without notice or demand of any sort, at such place and on such terms as the said holders hereof may deem best, and the holders of this note are authorized to purchase said collaterals for their own protection; that the proceeds of such sale, transfer or hypothecation, shall be applied to the payment of this note, together with all protests, damages, interests, costs, and charges due upon the note, or incurred by reason of its non-payment when due, or in the execution of this power."

The parties all understood that the $1500 note and deed of trust of Brown, mentioned in this instru·

ment was at that time held by plaintiff bank as col-
lateral to secure a loan to Cummings of $700, and
they seemed to think that in order for the note and con-
tract executed by Cummings to Kirkman and Williams
to be binding the bank would have to consent to it, so
they all went to the bank and explained the arrangement
between them to the cashier, and, at their request, he
signed a statement on the back of the Cummings note
and contract as follows:

"The Bank of Houston recognizes the within as a
second incumbrance on the property thereby pledged and
agrees to turn over and deliver said property to the
holder of this note when the seven hundred dollar note
due this bank, for which said property is pledged to it,
shall be paid, together with all interest on said $700.00.

THE BANK OF HOUSTON,

E. C. DAVIDSON,

Cash."

Defendants, Kirkman and Williams, in order to pay
Cummings $100 of the amount they were to furnish him,
borrowed the same from plaintiff bank, and executed
their note therefor with defendant Barton, as security.
The note sued upon is a renewal of this note. The $100,
borrowed from the bank by defendants, was paid to Cum-
mings in the presence of the cashier. The writing exe-
cuted by Cummings, with the endorsement thereon
signed by the Cashier, Davidson, was retained by defend-
ants and the parties separated. Afterwards the plaintiff
bank, through another bank at Cabool, Missouri, col-
lected the $700 due it and turned the $1500 note and deed
of trust over to Cummings and by an agreement between
him and Brown the $1500 note and deed of trust of
Brown's was paid and cancelled without Brown having
any knowledge of defendants' contract with Cummings.

When this suit was brought defendants answered,
setting up the contract between them and Cummings
and alleging that the loan of $100 by the bank to defend-

ants for which the note in suit was given, was a part of the same transaction and that the delivery by the bank of the $1500 note to Cummings was wrongful and that defendants thereby lost their security for the debt owing by Cummings to them, and that Cummings is dead and his estate insolvent, and alleged damages in the sum of $115, and asked to offset this against the amount due on their note to the bank.

The trial in circuit court was by the court and the issues were found in plaintiff's favor, upon the sole ground that defendants' demand against Cummings was not due as appears from the judgment which is as follows:

"Now come the plaintiff and defendants and announce ready for trial, and the court after hearing the evidence and argument of counsel and being fully advised in the premises, doth find that the defendants' counterclaim herein filed is not due and without determining whether defendants may have any claim against the plaintiff bank when the note described in defendants' counterclaim becomes due, the court finds the issue for plaintiff on the counterclaim herein filed, on the sole ground that the note described in defendants' counterclaim against one Cummings, was not due when action was commenced against defendants by plaintiff, and the court finds the issue for the plaintiff in the sum of one hundred and eighteen dollars."

If defendants have any cause of action against the plaintiff it is because the action of the cashier in turning over the $1500 note and deed of trust to Cummings amounted to a conversion, by the bank, of defendants' security for their debt from Cummings. In such a case the cause of action accrues at the time of the conversion and defendants were not required to wait until their debt from Cummings matured, in order to assert their right to damages against plaintiff. [Lafayette Co. Bank v. Metcalf, Moore & Co., 40 Mo. App. 494; National Bank of Commerce v. Moore, 114 Mo. 255, 21 S. W. 511.]

The trial court was wrong in holding that defendants' cause of action against plaintiff, if they had one, had not matured. However notwithstanding this error, if the judgment is for the right party, the error is harmless and the judgment should be affirmed.

Appellants insist that the note and contract executed by Cummings to them amounted to a repledge of the $1500 note to secure their debt while respondent contends that it only gave defendants an equitable right, if any at all, which could only be enforced in a court of equity, and, therefore, could not be made the subject of set-off in an action begun before a justice of the peace. A careful reading of this instrument convinces us that it should properly be designated a chattel mortgage. [Riddle v. Norris, 46 Mo. App. 512; Fleisher Bros. v. Hinde, 122 Mo. App. 218, 222, 99 S. W. 25.]

That the interest of Cummings in the $1500 note and deed of trust could be sold or mortgaged there can be no question. [Ottumwa National Bank v. Totten, 114 Mo. App. 97, 89 S. W. 65; Tuttle v. Blow, 176 Mo. 158, 75 S. W. 617; Dickey v. Porter, 203 Mo. 1, 101 S. W. 586.] The provisions of this chattel mortgage indicate a clear intention of the parties that defendants should be entitled to possession of the $1500 note and deed of trust as soon as the $700 debt of Cummings to the bank was paid. The parties so understood it for it was by their joint direction that the cashier signed the statement on the back thereof by which the bank agreed to deliver possession of the $1500 note to the holder of the Cummings note to defendants when the $700 note to the bank was paid. Of this agreement and the right of defendants to possession of the $1500 note when the bank's note of $700 was paid the bank had notice through its cashier and yet when their debt of $700 was paid the possession of the $1500 note was delivered to Cummings, and he at once delivered it to Brown, who paid it and cancelled it without notice of defendants' rights.

It is insisted by respondent that the cashier exceeded his authority in executing the agreement on the back of the Cummings note to defendants, by which he sought to bind the bank to deliver possession of the $1500 note to defendants when the bank's debt was paid.

It is true the cashier of a bank is only the agent of the bank and can only bind the bank within the scope of his actual or apparent authority.

The statute, section 1112, Revised Statutes 1909, places some restrictions upon the powers of a bank cashier, but his authority to make loans and take collateral security therefor and his duty in disposing of the collateral when the debt to the bank is paid, is not affected by the statute. As to these matters he clearly has authority to bind the bank in the absence of notice to the party dealing with him of a want of such authority. Loaning money and taking collateral security therefor and returning to the owner the collateral when the debt secured by it is paid, is an every day occurrence in the banking business, and as to all the ordinary business of the bank the cashier is the executive arm of its board of directors, and may bind the bank by his acts. [Bank v. Hughes, 62 Mo. App. 576; Marshall v. Bank, 76 Mo. App. 92; Hill v. Bank of Seneca, 87 Mo. App. 590.]

Upon the payment to the bank of its debt, it was the duty of the cashier in charge of the bank's assets and collaterals to return the $1500 note and deed of trust to the pledgor, or in case of a transfer of his interest therein and notice to the bank, to deliver it to the then owner, and for a failure to perform this duty the bank will be liable. [Southworth Co. v. Lamb, 82 Mo. 242; Hughes v. Settle (Tenn.), 36 S. W. 577.]

It was not necessary for the cashier to execute the supposed contract of the bank as endorsed upon the back of Cummings' contract with defendants, in order to fasten upon the bank the duty to return to the proper party collaterals held by it. This duty became fixed

when the collaterals were deposited with it, and the endorsement of the cashier added nothing to it. The only purpose this endorsement can serve is to charge the bank with notice of the change of ownership, and this notice—not the supposed contract signed by the cashier—fixed upon the bank the duty to return the collateral to defendants when the debt to the bank was paid. [Horsley v. Moss (Tex.), 23 S. W. 1115; Jones v. Foreman (Iowa), 61 N. W. 846.]

It is contended by respondent, that if defendants have any right of action against plaintiff it arises out of tort, and is not connected with the plaintiff's cause of action in any way, and cannot for that reason be made the subject of set-off or counterclaim in this action. With this contention we agree. The duty of the bank to return the $1500 note to the party entitled at the time to its possession was fixed by the acquisition by defendants of the right to its possession, and notice of that fact to the bank and the execution of the note in suit had nothing to do with that question in a legal sense. Defendants testified that if the cashier had not agreed to deliver possession to them when the bank's debt was paid they would not have executed the contract with Cummings. Be that as it may, the agreement of the cashier was not necessary in order to fix the liability of the bank to defendants, and hence, in a legal sense the duty of the bank to deliver the note to defendants, and the execution of the note in suit by defendants, are wholly disconnected, and defendants can no more offset their claim for damages for conversion against a suit on their note to the bank in this case, than they could if such note had been executed before defendants made the contract with Cummings. It is not the date of a contract nor the moral reasons for its execution that permits a claim sounding in tort to be offset against it, but to bring the tort within the statute there must be some connection in a legal sense between the contract sued upon and the tort, damages for which are sought to be

set-off against it and unless this connection appears the set-off cannot be available. [Gantt v. Duffy, 71 Mo. App. 91; Wilkerson v. Farnham, 82 Mo. 672; Statutes 1909, secs. 1807 and 7445.]

The defendants, therefore, cannot use their demand against plaintiff as an offset in this case, but for relief will be remitted to a separate action.

The judgment is for the right party in this case and will be affirmed. All concur..