WILLIAM G. HORSELEY v. MOSS & PENNINGTON ET AL.

No. 74.

**Conversion—Bailees—Ratification—Landlord and Tenant Act.—**
Horseley, the owner of the land, who under the contract between him and
Turner, the maker of the crop, was entitled to one-half thereof, notified the pub-
lic ginners at the beginning of the cotton season that the cotton raised on his
farm was his, and that they must not allow it to be removed from the gin by
Turner, or any one else, without his written order. Afterward the ginners, with-
out permission of Horseley, delivered ten bales of cotton, which had been entered
on their gin books in the names of Horseley and Turner, to Turner, who sold the
same and applied the money to his own use. In a suit, after demand, by Horse-
ley against Turner and the ginners for conversion of the ten bales, *held:*

1.   Under the farm contract, Horseley had a specific interest in the cotton
itself, and not a mere lien thereon.

2.   In so far as Turner is concerned, he would be liable for conversion, whether
he went on the place as a tenant or as an employe or servant of Horseley.

3.   The ginners were bailees for hire of both Horseley and Turner, and if
against the protest of Horseley they turned over the ten bales of cotton to
Turner, who converted the same, the ginners are liable to Horseley for the value
of his half of the cotton.

4.   The landlord and tenant act was not intended to take away the right of the
parties to make any contract they may deem proper in regard to their ownership
in the crops raised.   The law will protect in the very property itself the specific
interest of the landlord reserved in the crops grown upon his land.

5.   That Horseley had accepted from the attorney of Turner, prior to the con-
version of the ten bales, a part of the proceeds of three bales previously taken off
by Turner, would not take away his right to hold the ginners responsible jointly
with Turner for his interest in the ten bales.

APPEAL from the County Court of Hunt.   Tried below before Hon.
W. H. RAGSDALE.

*Perkins, Gilbert & Perkins*, for appellant.—1.   There is nothing in our
statutes to prevent the owner of land making such contract as he deems
proper relative to the cultivation of his lands, thereby creating such re-
lation with the party occupying the premises as the terms of the contract
make.   Rev. Stats., art. 3121.

2.   The terms of the contract between appellant and appellee Turner
created the relationship of tenants in common; and the sale of the whole
of a chattel by one tenant in common is an injury for which the other
may maintain trover or trespass against him.   Hammock v. Creedmore,
3 S. W. Rep., 180; Aikin v. Smith, 21 Vt., 172; Warren v. Allen, 44 Am.
Dec., 406; Nowlen v. Colt, 41 Am. Dec., 756; Rains v. McNairy, 40 Am.
Dec., 651; Bradley v. Boynton, 22 Me., 287; Dyckman v. Valient, 42 N.
Y., 549; Parminter v. Kelley, 18 Ala., 718; Thomp. Law of the Farm,
332–334, and authorities; 87 Ala., 89; 46 Ga., 583; 21 Vt., 179.

3.   If it is doubtful whether the terms of the contract create a lease or

cropping contract, it will be deemed a cropping contract. Dulaney v. Dickerson, 12 Ala., 601; Webb v. Preston, 25 Cal., 59; Thomp. Law of the Farm, 331–337, and authorities; 17 Cal., 542; 1 Hill, 235.

4. One of two tenants in common of chattels naturally severable, such as cotton or grain, may sever and appropriate, without the consent of the other, the quantity to which he is entitled; but such tenant in common can sell his own share only.

As to right to sever: Newton v. Howe, 21 Wis., 531.

As to right of one tenant to sell his own share only: Bradley v. Boynton, 22 Me., 287; Dyckman v. Valient, 42 N. Y., 564.

5. When a bailee has knowledge of the claim of title by another, adverse to his bailor, and the bailee disposes of the property, or consents that it be done, he becomes responsible to the adverse claimant upon the establishment of his claim against the bailor. McAnelly v. Chapman, 18 Texas, 198; Roberts v. Yarboro, 41 Texas, 450; Rev. Stats., arts. 3108–3111; Rogers v. Wier, 34 N. Y., 463.

*R. D. Thompson,* for appellees Moss & Pennington.— 1. If the terms of a contract bring it within the provisions of title 58, article 3107, Revised Statutes, such contract is a lease, and the parties thereto sustain the relation to each other of landlord and tenant, and such contract is controlled by the provisions of said statute. Sayles' Civ. Stats., art. 3107; Pace v. Sparks, 1 Posey's U. C., 402; 1 W. & W. C. C., secs. 1182, 1217, 1121; Railway v. Bayliss, 62 Texas, 570.

2. In an action against two or more persons for a joint trespass and conversion, there must either be a joint recovery or no recovery at all. Several judgments can not be rendered upon a complaint for a joint trespass and conversion of personalty. Thompson v. Allbright, 14 S. W. Rep., 1020; 2 Willson's C. C., sec. 424; McGehee v. Shafer, 15 Texas, 198; 1 Suth. on Dam., 211; Markham v. Navigation Co., 73 Texas, 247; Freem. on Judg., sec. 236.

3. The landlord is not entitled to the possession and control of the crop of his tenant, or any part thereof, except by such tenant's permission; and were the landlord to take possession of it in any manner other than that provided by law, he would be a trespasser. Pace v. Sparks, 1 Posey's U. C., 402, and authorities.

4. Every hired bailee is bound to deliver to the bailor or his order, or to such third person as may have been mutually agreed upon. Schoul. on Bail., 118 et seq.

*Evans & Hargrave,* for appellee Turner.—A landlord has no title to any portion of the tenant's crop. The law gives him a lien, and if he fears the removal of the property from the rented premises, he may sue out his distress warrant. When two parties enter into a contract wherein

it is agreed that one shall furnish the land, team, and tools to cultivate the same, the other to take exclusive possession and furnish the labor and cultivate a crop thereon, the same when gathered to be equally divided between them, such contract creates the relation of landlord and tenant, and places it upon the same footing as that of one in which a moneyed consideration is paid for the use of the land. The landlord has a lien upon the crops to secure the rent, and may enforce it by a distress warrant, in the manner provided by statute. Such a lien and such a remedy is inconsistent with the relationship of tenancy in common. Railway v. Bayliss, 62 Texas, 575; Wood on Landl. and Ten., 927; Laux v. Glass, Moffitt, Armstrong & Co., 1 W. & W. C. C., secs. 1182, 1217; 4 Am. and Eng. Encycl. of Law, 897; Warner v. Abbey, 112 Mass., 355.

LIGHTFOOT, CHIEF JUSTICE.—This suit was brought by appellant, Horseley, against appellees, Moss & Pennington and J. B. Turner, the facts being, substantially, that during the year 1890 Horseley made a contract with Turner, whereby the latter furnished the labor and Horseley the farm, tools, team, and feed, and Turner made the crop, which was to be divided equally between them. After the crop was made, the corn was divided equally, and the cotton was carried by Turner to the gin of Moss & Pennington, who were public ginners, to be prepared for market, and was entered on their gin books in the joint names of Horseley and Turner. At the beginning of the cotton season, Horseley (appellant) notified Moss & Pennington that the cotton was raised on his farm and was his, and that they must not allow it to be removed by Turner, or any one else, without his written order. Shortly afterwards, there were four bales of cotton prepared for market, which Turner promised to haul to Horseley at Greenville, but failing to do so, the latter had it hauled, and sold it. Subsequently the ginners prepared three other bales, which were taken by Turner and sold, and by agreement the proceeds of the seven bales were divided, Horseley being paid $50 upon his claim for advances. Afterwards there were ten other bales prepared by Moss & Pennington, which they delivered to Turner, who sold the same and applied the money to his own use. Horseley, after making formal demand upon the parties, sued Turner and Moss & Pennington for conversion of the ten bales of cotton. There was a verdict and judgment for all the defendants, from which Horseley has appealed.

The charge of the court which was complained of below, and upon which errors are assigned in this court, was substantially this: That if Turner was the tenant of Horseley, the jury must find for the defendants; but if Turner was the employe or servant of Horseley, and the latter had notified Moss & Pennington not to deliver the cotton to Turner, then they must find for plaintiff. This charge was excepted to, and several charges asked by the plaintiff below; among others, a charge that if Horseley and

Turner, by the terms of the contract, were equally interested in the owner-
ship of the cotton, and the latter appropriated all of the ten bales to his
own use, then plaintiff could recover against him for the value of half of it.

Appellant also asked a charge, in substance, that if Moss & Pennington
were public ginners, at whose gin the cotton was being prepared for
market, and that Horseley was equally interested with Turner in the cot-
ton, and notified the ginners not to deliver the cotton to Turner, and they
did deliver the entire ten bales to him, and he appropriated the same to
his own use, then the said Moss & Pennington would be liable to Horse-
ley for his portion of the cotton. These requested charges were refused.

The charge of the court makes the liability of all the defendants de-
pend upon the question whether Turner was a tenant or an employe or
servant of Horseley.

In so far as appellee Turner is concerned, if he took the ten bales of
cotton and sold them, and appropriated the proceeds to his own use, and
half of it was justly the property of Horseley, he would be liable to ap-
pellant, Horseley, for the value of one-half of it, no matter whether
Turner went upon the place as a tenant or an employe or servant of
Horseley.

From the testimony of Horseley and Turner, it is evident that under
the farm contract between them for the year 1890, Turner stood in the
relationship not merely of a servant or employe, but as a contractor who
had a direct interest in the crops. He was to furnish all the labor and
control it, while Horseley was to furnish the land, teams, feed, tools, etc.
They were to divide the crops equally. After the cotton had been raised,
and by mutual consent hauled to the gin, neither party had the undis-
puted control over it, and yet both claimed it. Moss & Pennington had
full notice of appellant's claim. They were bailees for hire for both par-
ties; and if, against the protest of appellant, they turned the ten bales of
cotton, in which he owned a half-interest, over to Turner, who appro-
priated all of it to his own use and benefit, they are responsible to ap-
pellant for the value of his half of the cotton.

It has been held, that where there is a rental contract whereby the land-
lord is to get a part of the crops merely for the rent of his land, that the
tenant has the right to the possession of the crops, subject to the land-
lord's lien for his rents; but he can not remove the same from the rented
premises without the consent of the landlord. Sayles' Civ. Stats., art.
3108; Railway v. Bayliss, 62 Texas, 575.

Even in a strictly rental contract, the removal of the crops by consent
of the landlord, to the gin for the purpose of preparing them for market,
would not in any manner affect the lien of the landlord for his rents and
advances. Sayles' Civ. Stats., art. 3111.

But the landlord and tenant act was not intended to take away the
rights of the parties to make any contract they might deem proper in re-

gard to the ownership of the respective parties in the crops raised, or any other matters concerning the same. Sayles' Civ. Stats., art. 3121.

There is no doubt that the land owner, if he desires to do so, may by contract reserve a specific interest in the crops grown upon his lands, and such interest will be protected by law, in the very property itself, and not merely a lien upon the same to secure the rents. In such case the land owner may bring suit for his specific interest in such crops; and if the same have been placed in the hands of a bailee, who has knowledge of such interest, and who, against the protests of such land owner, delivers the whole of the property to another, and the interest of such part owner is thereby lost, he may bring suit against both the bailee and the other part owner for conversion of the property. Roberts v. Yarboro, 41 Texas, 450; Tinsley v. Craig, 15 S. W. Rep., 897; Hendricks v. Smith, 12 S. W. Rep.; 781; Hammock v. Creekmire, 3 S. W. Rep., 180; 1 Tayl. on Landl. and Ten., sec. 24; Heald v. Builders, 111 Mass., 38; Lewis v. Lyman, 22 Pick., 437; Wentworth v. Miller, 53 Cal., 9.

In this contract the land owner furnished not only the land, but also the teams, the tools, the feed for the teams, etc., and what he was to get as his portion of the crops was not only for the use of the land, but also for the use of his teams, his tools, and for feeding the teams, etc. He had something more than a landlord's lien on the crops; he had a specific interest in the crops themselves.

While there is some conflict in the testimony on other points, yet it was not denied by any of the parties that Horseley and Turner were each to have one-half the cotton; that the ten bales in controversy were hauled by Turner to the gin of Moss & Pennington to be prepared for market; that it was entered upon their gin books in the name of Horseley and Turner; and that Moss & Pennington were notified by Horseley not to deliver the cotton to Turner.

Moss & Pennington, according to the undisputed testimony, became the bailees for hire of both Horseley and Turner, and were responsible to each of them for his interest in the cotton; and while under ordinary circumstances they might probably have considered a delivery to one as a delivery to both, yet where there was a dispute between them as to the right of possession, and each claimed the cotton, and they were notified as such bailees not to deliver the same to Turner, if they did so, under such protest, and the interest of Horsely was thereby lost, they became responsible to him for his interest in the cotton. McAnelly v. Chapman, 18 Texas, 198; Lucketts v. Townsend, 3 Texas, 119; Kowing v. Manly, 49 N. Y., 192; Schoul. on Bail., secs. 117, 118, 501; Story on Bail., 9 ed., sec. 114; 2 Am. and Eng. Encycl. of Law, 56, subdiv. 9, note 4, and authorities cited. The right of appellant to hold Moss & Pennington responsible jointly with Turner for his interest in the ten bales of cotton could not be taken away by his having accepted from the attorney of Turner a part

of the proceeds of the three bales previously taken off by Turner. It was in no case a ratification of the conversion of the property.

For the errors of the court in its charge, and in refusing to give the above mentioned charges asked by plaintiff below, the judgment is re-reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 15, 1893.