## JACO v. W. A. NASH & CO.  (No. 8608.)

(Court of Civil Appeals of Texas. Dallas. Dec. 17, 1921.)

**1. Chattel mortgages ⬤⟷157(2)—Evidence held to warrant finding that landlord as to mortgagors of crops waived lien.**

In action to foreclose a chattel mortgage on crop executed to secure indebtedness incurred during the year for merchandise and supplies, involving issue as to whether mortgagors were tenants or share croppers, evidence that proprietor of farm told mortgagee to furnish merchandise and supplies to mortgagors, and that such proprietor agreed that he would not let such mortgagors owe him anything during the year, *held* to warrant a finding that proprietor, if landlord as to such mortgagees, waived his landlord's lien in favor of mortgagee.

**2. Landlord and tenant ⬤⟷323—Crops contract held to create relation of tenants in common in crops, and not that of landlord and tenant.**

A contract by the terms of which one of the parties supplies the land, teams, implements, etc., and the other supplies the labor under an agreement to share the crops produced equally, is not an ordinary rental contract creating the relation of landlord and tenant between the par-

ties, but creates relationship of tenants in common in the crops.

**3. Landlord and tenant ⊗⊐326(1)—Farm owner, who completed the work on share cropper's abandonment, held entitled to expense in addition to his share.**

If contract for share of crops between owner of land and others who agreed to perform the work created the relation of tenants in common of the crops, the owner on abandonment of the undertaking by such other persons, could complete the undertaking himself, in which case his share, in addition to his one-half interest, would include a sufficient amount to cover the costs of completing the undertaking himself.

**4. Chattel mortgages ⊗⊐283—Judgment foreclosing mortgage held defective for failure to apply foreclosure to any specific property.**

Judgment, foreclosing chattel mortgage on crops, *held* defective for failure of pleadings to describe the property sufficiently to identify it, and for failure of the judgment itself to apply the foreclosure to any specific property.

Appeal from Kaufman County Court; J. P. Coon, Judge.

Suit by W. A. Nash & Co. against W. J. Jaco and others. Judgment for plaintiff, and the named defendant appeals. Reversed and remanded.

Ashworth & Ashworth, of Kaufman, for appellant.

Wynne & Wynne, of Kaufman, for appellee.

HAMILTON, J. Appellee sued two parties named, respectively, Will Vinson and Thomas Bennett, jointly with appellant, and recovered the judgment from which this appeal is prosecuted.

It was alleged that on the 6th day of January Vinson and Bennett executed a mortgage to appellee upon one-half of all the cotton, cotton seed, and other products raised in the year 1920 on the farm of Jaco in Kaufman county by Vinson and Bennett, and that the mortgage was executed for the purpose of securing appellee by such chattel mortgage for the payment of an indebtedness on the same day agreed upon by appellee and Vinson and Bennett, which was to accrue during the year 1920 as a result of appellee supplying articles of merchandise to the said Vinson and Bennett while they were farming on appellant's plantation. It appears from the chattel mortgage, which is made a part of the petition, that Vinson and Bennett were share croppers on Jaco's farm, and it is alleged on behalf of appellee that after the agreement had been made between appellee and Vinson and Bennett, and after the mortgage had been executed as above stated, appellant agreed with appellee that if the latter would supply Vinson

and Bennett during the year 1920 appellant would not supply them any dry goods or other supplies, nor supply them with any money, and that, acting under this agreement, appellee sold articles to Vinson and Bennett on credit amounting to the sum of $501.77. It was further alleged that the property alleged to have been mortgaged to appellee was converted by appellant, Jaco, as against appellee. There was a prayer for the amount of the debt, for foreclosure of the mortgage upon all the cotton and cotton seed raised by Vinson and Bennett during the year 1920, and that such foreclosure of the mortgage lien be made against Bennett and Vinson and Jaco; and there was a prayer for general relief, both in law and in equity.

Appellant answered the petition by general and special exceptions, and further answered, alleging that Vinson and Bennett were his tenants, and resided upon and cultivated his land during the year 1920; that the tenants were share croppers, and worked the land on the halves; that during the year he supplied them with money and other necessaries for the cultivation and harvesting of the crop. The amount of the indebtedness thus accruing to him against Vinson and Bennett was alleged, and the allegation was made that under the contract with these parties he was entitled to one-half of all cotton and other products raised by them over and above his accounts as alleged. He asserted a landlord's lien on the crops for the rents and advances alleged to have been made by him, and alleged that the landlord's lien was superior to any mortgage held by appellee, and pleaded that he was entitled to a foreclosure of his landlord's lien against appellee and Vinson and Bennett for the rents and advances due and unpaid. He specially denied that he at any time agreed with appellee that he would not advance supplies to Vinson and Bennett while they were tenants on his farm during the year 1920, and denied all other allegations of the petition. He prayed for judgment against Vinson and Bennett for the amount of rents and advances alleged by him to be due, and for a foreclosure of his landlord's lien against Vinson and Bennett and W. A. Nash & Co.

The case was tried before the court without a jury, and is before us without any special findings of fact or conclusions of law.

The facts show without dispute that Bennett and Vinson, who seem to have been negro occupants of appellant's farm in the year 1920, made an agreement with appellee on the 6th day of January of that year to the effect that appellee should supply them with merchandise, and that the mortgage was executed in pursuance of this agreement, for the purpose of securing the payment of the indebtedness resulting from

supplies being thus advanced to them by appellee, which was a mercantile concern in Kaufman, Tex. The record conclusively reflects the further fact that appellant was not a party to the agreement at the time it was made. There was testimony on behalf of appellee to the effect that the understanding and agreement between appellee, on the one part, and Vinson and Bennett on the other, for the advancing of merchandise and supplies, was mentioned to appellant about the 1st day of February, 1920, and that he then agreed that he "would not let Thomas Bennett and Willie Vinson owe him anything" during the year 1920, and that he told a representative of W. A. Nash & Co. "to furnish them." This was denied by appellant, who stated that the only conversation he ever had with the representative of appellee about the matter was after the 6th day of March, when he told W. A. Nash, a member of the firm of Nash & Co., that he "guessed" it would be all right for the firm to sell to Vinson and Bennett "if he did not let them have more than they could pay for." He testified that this statement was made in response to a statement by Mr. Nash to the effect that Vinson and Bennett had made arrangements to trade with him, and inquired if it were all right.

[1] If the record were in such condition that we could say Vinson and Bennett were tenants on Jaco's farm during the year 1920, rather than what is known as "share croppers," then we are inclined to the opinion that the evidence is such that the trial court might have found that Jaco waived his preference landlord's lien in favor of W. A. Nash & Co., so that the judgment in this respect could be upheld, but the record presented to us does not disclose any evidence reflecting the contractual relations between Vinson and Bennett and Jaco to be those which characterize in law the relation of landlord and tenant. While the contract might be such as to create the relation of landlord and tenant notwithstanding the fact that the land was to be cultivated on the halves, yet, a contract between a landowner and another person to cultivate land on the halves, the former supplying teams, tools, etc., and the latter merely doing the labor, ordinarily is not a contract from which arises the relation of landlord and tenant, and it has been held that, where there is no proof of some specific understanding to the contrary, an agreement between the parties to share the crops on such basis will be held to render the parties tenants in common as to the crop. That is, no proof of the actual contract appearing, and the record disclosing that the landowner is to supply teams, tools, etc., while the other party is to do the labor of planting and harvesting, the products to be equally divided when harvested, then it will be presumed that the contract did not create the relation of landlord and tenant, but that the parties are tenants in common in the crops. But in this case no proof appears to the effect that Jaco was to supply teams, tools, etc., and that the other parties were to do the labor. In the pleadings and proof, Bennett and Vinson are called tenants, and are also said to be working on the halves.

[2] We think it well settled in this state that a contract by the terms of which one of the parties supplies the land, teams, implements, etc., and the other supplies the labor, under an agreement to share the crops produced, equally, is not an ordinary rental contract creating the relation of landlord and tenant between the parties. If the contract between Vinson and Bennett and Jaco was of this particular kind, then the relation of landlord and tenant did not exist between them so as to render the agreement between Jaco and Nash, as testified to by Nash, a waiver of Jaco's right and interest in the cotton and cotton seed, against which it was sought to foreclose the mortgage. Whether or not Vinson and Bennett were Jaco's tenants, or, on the other hand, were tenants in common with him as to the crops raised, we cannot determine from the record. The true relation, we think, can be reflected only from all the terms of the contract made between them. The mutual intention of the parties, of course, must determine the contract. Notwithstanding the agreement was that Vinson and Bennett should share the crops produced equally with Jaco, yet, if the understanding was such as to put the entire title to the crops raised in Vinson and Bennett with a lien in favor of Jaco to secure the payment of the one-half, then the relation of landlord and tenant would thereby be created so that Jaco would not have a specific interest in the crops themselves, but only a landlord's lien against them to enforce the payment as rent of the one-half. On the other hand, if the terms of the contract were not such as to reveal an intention to this effect, but were only those which ordinarily exist between a landlord and the person to whom he lets his land on the halves, then, in that event, Jaco would not merely have a landlord's lien on the crops to secure the payment of rents but he would have a specific one-half undivided interest in whatever might have been grown on the land, and he and Vinson and Bennett would be tenants in common of all such crops. In the former instance, the understanding or agreement testified to by W. A. Nash as having been made between him and Jaco could be held to be a waiver of the landlord's lien so as to extinguish any claim on the part of Jaco in the cotton and cotton seed, and leave W. A. Nash & Co. with a valid and enforceable lien against it. Whereas, in the latter instance, Jaco would have title to an undivided one-half interest in the crops grown on the land which would not be subject to mortgage by Vinson and Bennett, and

as to which no landlord's lien would exist to be waived by Jaco. Horseley v. Moss, 5 Tex. Civ. App. 341, 23 S. W. 1115; Rogers v. Frazier Bros., 108 S. W. 727; Tignor v. Toney, 13 Tex. Civ. App. 518, 35 S. W. 881; Jones on Landlord and Tenant, § 50 et seq.

[3] Assuming the contract between Jaco and Vinson and Bennett to have created the relation of tenants in common of crops, upon the condition of the two latter having performed the undertaking of doing all the labor, still we are unable to determine from the record whether or not Vinson and Bennett carried out their part of the contract with Jaco and completed the undertaking of making and gathering the crops. If they did not do this, but abandoned the crops before they were made and harvested, leaving Jaco to perform the work of finishing the undertaking and incurring the expense incident thereto, then, in that case, we are of the opinion that his interest and rights would extend beyond the undivided title and interest to one-half of the cotton and cotton seed to the extent of whatever amount such costs of finishing the undertaking of making and gathering the crop might be. Appellant alleged that Bennett abandoned his crop. Besides, the inference is to be derived from the account filed by Jaco that Vinson and Bennett did not gather the crops, but that Jaco was compelled to perform some labor and incur certain expense in connection with harvesting the cotton. At the same time, many items appear in the account filed on behalf of appellant for which charges were made that could not be secured by a statutory landlord's lien if the relation of tenants in common existed between Jaco and Vinson and Bennett as to the crops, instead of the relation of landlord and tenant under the contract between them. While the indebtedness set forth in the account with respect to such items, if the parties were cotenants, would not be secured by a landlord's lien, although since Jaco has possession of all the cotton he could doubtless fix a lien upon Vinson and Bennett's interest therein for the purpose of enforcing payment of these various amounts, except for the fact that it appears that at the time these supplies were advanced to Vinson and Bennett, W. A. Nash & Co.'s mortgage had already been executed and was filed in the mortgage record, and except for the further fact that Jaco had been told by Nash that he had the mortgage for the purpose of securing advancements and supplies made by his company. In other words, the undisputed facts establish both actual and constructive notice on the part of Jaco of the existence of W. A. Nash & Co.'s chattel mortgage.

[4] There are other respects in which the judgment seems to be defective. Nowhere in the pleadings of either party is there any description of the property upon which fore-closure is sought which would be sufficient to identify it. The judgment, itself, while foreclosing appellee's chattel mortgage, is deficient because it does not apply the foreclosure to any specific property.

Since the evidence and the pleadings are indefinite in the respects above indicated, and do not contain facts from which it can be ascertained whether or not the relation of landlord and tenant existed between Jaco and Vinson and Bennett, and since it does not satisfactorily appear whether or not Vinson and Bennett completed their contract or abandoned it so as to compel Jaco to expend labor and money in harvesting it, and also by reason of the defect last above mentioned, we think it necessary to reverse and remand the cause.

Reversed and remanded.