**GUARANTY BOND STATE BANK OF SAN ANGELO v. DUNCAN et al.   (No. 7332.)**

Court of Civil Appeals of Texas.   Austin. June 6, 1929.

Rehearings Denied June 26, 1929.

J. A. Thomas, Louis D. Gayer, and Lloyd Kerr, all of San Angelo, for appellant.

Chas. Gibbs and Glenn R. Lewis, both of San Angelo, for appellees.

McCLENDON, C. J. This litigation arose out of the following facts, undisputed except where noted:

In June, 1927, L. P. and J. P. Duncan, father and son, were each indebted to Guaranty Bond State Bank of San Angelo, in the approximate sum of $14,000. The father's indebtedness was secured by chattel mortgage upon live stock, farm implements, and other personal property of like character, by deed of trust on 1,406.5 acres of land, and by pledge of $12,500 in vendor's lien notes executed by the son to the father in part payment for 214.32 acres of land sold by the father to the son. The son's indebtedness was secured by chattel mortgage on live stock, farm implements, and other personal property. $4,000 of the son's indebtedness was for money borrowed by him and used to pay off indebtedness of the father. The son was in need of further loans in his farming ventures, and the bank was unwilling to increase his indebtedness. To meet this situation, an agreement was reached on or prior to the 15th of June, 1927, between the father, son, and the bank, by which the bank agreed to purchase the 214.32 acres of land from the son for $4,000. Under this agreement the son, under date of June 15, 1927, conveyed the land to the bank, the deed reciting as consideration a $4,000 credit on the vendor's lien notes and a $4,000 credit "upon the personal notes of L. P. Duncan, owing to and held by said bank, which credits have been duly made at the time of the execution and delivery of this deed." The jury found as a matter of fact that the name of L. P. Duncan in this latter recitation was a mutual mistake, and that the agreed credit was to be upon the notes of J. P. Duncan, the son. The deed further provided that the conveyance was "subject to the lien of the balance owing upon" the $12,500 of vendor's lien notes, and that these notes and the lien securing them should be kept separate and distinct from the title to the land which passed by the conveyance to the bank. In further consummation of the above agreement, L. P. Duncan signed the following stipulation, which bore date June 24, 1927:

"For and in consideration of the Guaranty Bond State Bank, of San Angelo, Texas, purchasing the 214.32 acres of land from J. P. Duncan, and crediting the note of said J. P. Duncan with $4,000.00 which I am due him by virtue of the fact that he has borrowed $2,000.00 each year for two years and made payments upon my notes against my land when they become due, and for other and valuable considerations, I hereby agree to and hereby give my willing consent to have the balance of the notes which I have pledged to the Guaranty Bond State Bank, to be and are hereby also pledged to the indebtedness of the said J. P. Duncan, in so far as the said balance of said notes will pay the said J.

P. Duncan's indebtedness, in case or at any time the said bank may deem the same due and payable.

"The said notes are pledged for the payment of said indebtedness, but at any time the said J. P. Duncan pays off the said indebtedness then the said notes are to be and remain as security on my indebtedness to said bank."

L. P. Duncan died, and J. P. Duncan qualified as administrator. The latter resigned, and Mrs. Minnie F. Duncan, surviving wife of L. P. Duncan, was appointed administratrix. The suit was originally brought by J. P. Duncan as administrator, and Mrs. Duncan was afterwards substituted as plaintiff. In her petition the bank and others were made parties defendant, and she sought to require a foreclosure of the vendor's lien notes held by the bank as collateral, claiming that under the agreement of June 24, 1927, the proceeds should be applied first to the indebtedness of L. P. Duncan. The bank filed exceptions to this petition, which the court sustained; and in a cross-action set up its various claims against both of the Duncans, and asked foreclosure of the vendor's lien notes and application of the proceeds, first, to the indebtedness of J. P. Duncan. It also sought foreclosure of the J. P. Duncan chattel mortgage and establishment of its claims against the estate, and the chattel mortgage and deed of trust liens securing them.

The trial was to a jury upon two special issues, which found the mistake above noted, and upon this finding the trial court rendered judgment, the pertinent portions of which were: In favor of the bank for the J. P. Duncan debt and foreclosure of its chattel mortgage lien; foreclosure of the vendor's lien notes with the direction that the proceeds be applied pro tanto to the indebtedness of L. P. Duncan; establishment of the bank's claims against the L. P. Duncan estate and the chattel mortgage and deed of trust liens securing them, the latter subject to a 200-acre homestead allowance; and an order that the judgment be certified to the probate court wherein administration pended. The bank has appealed, and the administratrix has cross-assigned error.

The controlling question in the bank's appeal is whether the trial court erred in holding that under the quoted June 24, 1927, stipulation, the vendor's lien notes were to be first applied to the L. P. Duncan indebtedness.

The general rules applicable to this question are:

▇ (1) The right of the owner of collateral to direct its application must be exercised at the time the pledge is made, either by an express direction or by reservation of future right of direction. Slaughter v. Insurance Co. (Tex. Civ. App.) 218 S. W. 1109; 31 Cyc. p. 865.

▇ (2) In the absence of express direction or reservation of right thereto by the owner, the pledgee may apply the collateral to any debt within the pledge that he may deem most precarious, or as his judgment may dictate. Same authorities.

▇ Appellee contends for the following constructions of the language of the June 24, 1927, stipulation:

1. That "balance" of the notes meant the balance remaining after paying the L. P. Duncan debts for which they were already pledged.

2. That the "indebtedness of J. P. Duncan" for which the notes were pledged was the $4,000 indebtedness referred to in the first part of the stipulation.

We overrule both of these contentions. The collateral notes were originally $12,500. By the agreement which was carried forward in the deed to the bank they were reduced by a credit of $4,000; the deed further reciting that the conveyance was "subject to the lien of the balance owing upon" these notes. We think it clear that this "balance" is the same "balance of the notes which I have pledged to the * * * Bank," in the stipulation of June 24, 1927.

We do not see how "indebtedness" secured by the pledge could be construed to mean the $4,000 mentioned in the first part of the stipulation. That $4,000 was to be a credit upon J. P. Duncan's indebtedness to the bank, and by that very act was extinguished as an indebtedness of his. It would have been an inane act to provide security for the payment of a debt that was paid. There is no suggestion in the stipulation that the debt secured was limited to $4,000 of the balance J. P. Duncan owed.

Viewed in the light of the surrounding pertinent facts we think the stipulation, if indicating any priority in application of the pledged notes, placed that priority on the J. P. Duncan debt. The notes were already pledged for L. P. Duncan's debt, which was also secured by chattel mortgage and trust deed liens. Under the trial court's judgment and appellees' contention, the proceeds of the pledged notes must be applied first to the L. P. Duncan debt and before resort to the other security the bank held. Under this view L. P. Duncan, had he lived, could have entirely defeated the pledge, in so far as it covered J. P. Duncan's debt, by simply declining to pay or reduce his own debt below the amount of the notes and demanding that they be applied to his debt. It should take clear and express language, we think, to import such intention to the parties.

The language employed in the stipulation not only fails to express such intention, but contains express provision to the contrary. The language, "pledged to the indebtedness of J. P. Duncan * * * in case or at any time said Bank may deem the same due and payable," indicates a continuing right in the bank to resort to the pledge to J. P. Duncan's

debt "*at any time*" regardless of the status of the L. P. Duncan indebtedness. The last sentence of the stipulation would indicate a primary pledge for the J. P. Duncan indebtedness and application to the L. P. Duncan debt only after discharge of the J. P. Duncan debt. We believe that by no reasonable rule of interpretation can it be held that the pledge was primarily to the L. P. Duncan debt.

This conclusion renders unnecessary a consideration of appellant's other propositions.

■ In support of appellant's claim of mutual mistake in the deed to it of the 214.32 acres, several witnesses were permitted to testify to admissions of such mistake by J. P. Duncan. To the admission of this testimony appellee cross-assigns error. Her objections to the testimony were (1) that it was impeachment of appellant's own witness, and (2) that admissions of J. P. Duncan were not binding on L. P. Duncan or his estate. We sustain the trial court's ruling.

J. P. Duncan was a party defendant, adverse to the bank, and the nonimpeachment rule invoked has no application.

■ The testimony was in connection with a trilateral agreement evidenced by two writings—the deed, signed by J. P. Duncan alone, and the June 24, 1927, stipulation, signed by L. P. Duncan alone. The testimony related solely to the deed, and clearly it was admissible as to J. P. Duncan who signed the deed. In so far as L. P. Duncan was concerned the stipulation which he signed was in this regard in direct conflict with the deed, and supported the view of mutual mistake therein in like manner as did the testimony of J. P. Duncan's admissions. In fact, we can hardly reconcile the recitation in the deed, if not a mistake, with any other fact or circumstance in evidence. It was shown without controversy that J. P. Duncan had borrowed and paid on his father's land notes $4,000; that the bank was to buy the land for $4,000 to be paid by credit on his indebtedness to the bank, and a like credit on his notes to his father which the bank held as collateral. There is no basis in the record for a similar credit on L. P. Duncan's indebtedness, and the stipulation, which the latter signed, not only does not mention any, but states that the credit was to be on J. P. Duncan's debt.

The administratrix contends that the case has not been fully developed upon the issue above discussed, and we will therefore remand and not render judgment thereon.

The administratrix excepted (cross-assigning error) to that portion of the judgment establishing a mortgage lien upon "all increase of, from and to the above described property (certain specific livestock); and, also all other cattle, sheep, hogs, horses and other livestock situated in Tom Green County on May 4, 1927, owned by said L. P. Duncan and all such property thereafter acquired by him." Urging two propositions: .

■ 1. Since no pleading or evidence described the property coming within this blanket clause, it was error to adjudicate a lien thereon in the general language of the mortgage.

This proposition is sustained upon the authority of Jaco v. Nash & Co. (Tex. Civ. App.) 236 S. W. 235.

Appellant contends that since the district court merely establishes but does not foreclose the mortgage, certifying its judgment to the county court for enforcement in the due course of administration, the rule announced in the Jaco Case does not apply, citing Lapowski v. Taylor, 13 Tex. Civ. App. 624, 35 S. W. 934; Childress v. Bank (Tex. Civ. App.) 264 S. W. 350; Handley v. McDonald & Ely Gin Co. (Tex. Civ. App.) 9 S.W. (2d) 372; South Texas Implement & Machine Co. v. Canal Co. (Tex. Com. App.) 280 S. W. 521. These cases are not in point. They merely hold the description sufficient to create a lien, and have nothing to do with the enforcement of the lien through judicial proceedings.

■ The holdings of our Supreme Court (Jenkins v. Cain, 12 S. W. 1114, and George v. Ryon, 94 Tex. 317, 60 S. W. 427) are to the effect that, where the administrator rejects a claim, the district court acquires jurisdiction, not alone over the money claim, but also over the lien given to secure it. It would seem to follow that the judgment of establishment should be as full and specific as a judgment of foreclosure, at least as to all property covered by the mortgage that is in existence at the time the judgment is rendered. Having jurisdiction to establish the lien, it should leave nothing open to controversy which could be adjudicated at the date of judgment.

■ 2. That the blanket clause was not intended to cover exempt property, and the judgment was erroneous in not excepting exempt property therefrom. Citing Seiling v. Gunderman, 35 Tex. 544.

The instrument there under consideration was a lease agreement of premises rented for hotel purposes, in which the landlord "reserved" "a mortgage lien * * * on all property of said lessees in said building or on said premises." The lessees had no property on the premises when the lease was made, and it was held that this general language would not cover exempt household and kitchen furniture of lessees afterwards placed on the property.

The language of the mortgage at bar is of all increase of specific live stock, all specified classes of live stock owned by mortgagor in a certain county, and all subsequently acquired live stock of the specified classes. The mortgage contains the additional clause: "Save and except such livestock as may be herein specifically reserved." We think the language employed covers

all property coming within its description whether exempt or not; and so hold.

That portion of the trial court's judgment awarding recovery and foreclosure against J. P. Duncan is left undisturbed. Those portions of the judgment establishing a lien upon the property of L. P. Duncan covered by the above-quoted blanket clause of the chattel mortgage of May 4, 1927, and directing the payment of the proceeds of the foreclosure upon the vendor's lien notes held by the bank as collateral security are reversed, and the cause in respect to those items of the judgment is remanded for a new trial. In other respects the trial court's judgment is affirmed. Costs of appeal are assessed against appellees.

Affirmed in part, and in part reversed and remanded.